The State of NEW YORK, Alexander B. Grannis, as Commissioner of the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation, Plaintiffs,

United Boatmen of New York, Inc., New York Fishing Tackle Trade Association, Inc., and the Fishermen's Conservation Association, Intervenor–Plaintiffs

v.

Carlos GUTIERREZ, in his official capacity as Secretary of the United States Department of Commerce, the United States Department of Commerce, Conrad C. Lautenbacher, in his official capacity as Under Secretary of

Commerce and as Administrator for the National Oceanic and Atmospheric Administration, James W. Balsiger, in his official capacity as Acting Assistant Administrator for the National Marine Fisheries Service, and the National Marine Fisheries Service, Defendants.

No. 08–CV–2503 (CPS)(RLM).

United States District Court, E.D. New York.

March 9, 2009.

Opinion Denying Reconsideration and Granting Certification April 7, 2009.

---

---

Andrew Jon Gershon, NYS Attorney General's Office, New York, NY, for Plaintiffs.

Vincent Lipari, United States Attorneys Office, Eastern District of New York, Central Islip, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

SIFTON, Senior District Judge.

Plaintiffs the State of New York, Alexander B. Grannis as Commissioner of the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation (together, "plaintiffs"), along with intervenor-plaintiffs United Boatmen of New York, Inc. ("UBNY"), New York Fishing Tackle Trade Association, Inc. ("NYFTTA"), and the Fishermen's Conservation Association ("FCA") (together, "intervenor-plaintiffs"), bring this action against defendants Carlos Gutierrez, in his official capacity as Secretary of the United States Department of Commerce, the United States Department of Commerce, Conrad C. Lautenbacher, in his official capacity as Under Secretary of Commerce and Administrator for the National Oceanic and Atmospheric Administration, the National Oceanic and Atmospheric Administration, James W. Balsiger, in his official capacity as the Acting Assistant Administrator for the National Marine Fisheries Service, and the Atlantic States Marine Fisheries Commission (the "ASMFC" or "Commission"). Plaintiffs claim that the final management rule for the 2008 recreational summer flounder fishery issued by the Department of Commerce (the "DOC"), through the National Marine Fisheries Service (the "NMFS"), pursuant to the Magnuson–Stevens Fishery Conservation and Management Act, as amended in 1996 by the Sustainable Fisheries Act, 16 U.S.C. §§ 1801, *et seq.* (the "MSA"), violates the MSA as well as standards of decision making under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"). In addition to these claims, intervenor-plaintiffs further claim that that the final management rule for the 2008 recreational summer flounder fishery issued by the ASMFC violates the ASMFC Compact & Rules and Regulations, Pub.L. 77–539 (1942), *as amended* by Pub.L. 81–721 (1950) ("ASMFC Compact"), the Atlantic Coastal Fisheries Cooperative Management Act, Pub.L. 103–206, 16 U.S.C. §§ 5101–5108 (the "ACFCMA" or "Fisheries Act"), the ASMFC Interstate Fisheries Management Program Charter (hereinafter "ISFMP Charter," *available at* http://www.asmfc.org/publications/), and the APA.

Presently before this Court is defendant ASMFC's motion to dismiss intervenor-plaintiffs' Complaint in Intervention ("Intv.Cplt."), insofar as that Complaint states a claim against ASMFC, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that intervenor-plaintiffs have no right of action against ASMFC. For the reasons set forth below, defendant ASMFC's motion is denied.

## BACKGROUND

Familiarity with the underlying facts and statutory background of this case are

presumed, based on my prior decision in this matter. *See New York v. Gutierrez*, No. 08–CV–2503, 2008 WL 5000493 (E.D.N.Y. Nov. 20, 2008). Acronyms employed here are defined in the November 20, 2008 memorandum opinion. What follows is a recent procedural history of the instant motion.

On November 20, 2008, I permitted intervenor-plaintiffs to intervene in this action and to join ASMFC as a defendant. *Id.* I reasoned that intervenor-plaintiffs had a colorable claim to a right of action against ASMFC on the grounds that ASMFC is a "quasi-federal agency," such that ASMFC's actions are subject to judicial review under the APA. *Id.* at *13. I noted, however, that my decision was rendered "without prejudice to ASMFC's right to move to dismiss on the ground that it is not a quasi-federal agency, or on such other grounds as may exist." *Id.* at *14.

On December 19, 2008, intervenor-plaintiffs filed their Complaint in Intervention. In addition to mirroring plaintiffs' claims against the federal defendants and asserting an additional claim, the Complaint in Intervention states claims against ASMFC for violations of the ASMFC Compact, the Fisheries Act, the ISFMP Charter, and the APA. Intv. Cplt. ¶¶ 2–3.

On January 2, 2009, ASMFC filed the instant motion to dismiss.

## DISCUSSION

### I. *Motion to Dismiss Standard*

In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (internal citations and quotations omitted),

although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994). In a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1970, 167 L.Ed.2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *id.* at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir.2007) (applying the standard of plausibility outside *Twombly*'s anti-trust context), it must "amplify a claim with some factual allegations ... to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in original). In other words, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Twombly*, 127 S.Ct. at 1965). In addition, a complaint should be dismissed under Rule 12(b)(6) if a court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir.2000).

### II. *ASMFC's Motion to Dismiss*

The discrete issue presented here is whether intervenor-plaintiffs have a pri-

vate right of action against ASMFC. Neither the ASMFC Compact, the acts of Congress approving it, *see* Pub.L. No. 77–539 (1942); Pub.L. 81–721 (1950), nor the Fisheries Act, nor the ISFMP Charter expressly provide for judicial review of ASMFC actions. In the absence of express Congressional authorization, the question is whether Congress intended to create an implied right of action against the ASMFC, or whether another federal statute authorizes suit against the ASMFC. *See, e.g., Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress").

In my previous decision, I concluded that the evidence weighed against finding that Congress intended to create an implied right of action arising under the ASMFC Compact, its authorizing legislation, or the Fisheries Act. *Gutierrez,* 2008 WL 5000493 at *11. There is no question, however, that Congress intended to create a private right of action against federal agencies by means of the APA—a statute enacted to promote agency accountability. *See, e.g., Japan Whaling Ass'n v. American Cetacean Soc.,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) ("The 'right of action' in [suits contesting agency action or inaction] is expressly created by the Administrative Procedure Act (APA)"); *Sharkey v. Quarantillo,* 541 F.3d 75, 84 (2d Cir.2008) ("In determining whether a suit can be brought under the APA, '[w]e begin with the strong presumption that Congress intends judicial review of administrative action' ") (citing *Bowen v. Mich. Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d

623 (1986)). The issue here is whether ASMFC qualifies as the type of entity to which Congress intended the APA to apply.

■ Section 10 of the APA authorizes suit by any person "suffering legal wrong because of agency action." 5 U.S.C. § 702. Under the APA, the term "agency" is defined as each "authority of the Government of the United States." 5 U.S.C. § 551(1). As I noted in my previous decision, "[t]he Commission is a creature of interstate compact, not a federal agency, and thus the presumption [that a right of action exists under the APA] does not apply to ASMFC." *Gutierrez,* 2008 WL 5000493, at *10. Nevertheless, whether Congress designates an entity as a federal agency does not end the inquiry as to whether the entity in fact operates as a federal agency. *See, e.g., Government Nat. Mortg. Ass'n v. Terry,* 608 F.2d 614 (5th Cir.1979) (noting that "Congress need not label an entity 'an agency' " in order for a court to find that the entity fits a statutory definition of "agency"). Whether an entity is akin to a federal agency is an important consideration, as Congress intended the private right of action available under the APA to render federal agencies accountable for their actions. *See, e.g., Bowen,* 476 U.S. at 670–73, 106 S.Ct. 2133. It follows that Congress may not, through legislation imposing federal obligations, oversight, funding, or otherwise, transform an entity into something closely resembling a federal agency, and yet escape the accountability mechanism it intended to apply to such federal agencies—unless, of course, it specifically provides that the APA shall not apply to the entity in question, which is not the case here.[1]

---

1. There is no requirement that Congress affirmatively provide in an agency's authorizing legislation that APA review of that agency's

actions shall be available in order for the APA to apply. In fact, a presumption exists to the contrary: "[a]n agency action is unreviewable

## A. *"Quasi–Federal Agency" Status*

Several cases brought against interstate compact agencies have considered the question of whether the entities created by those compacts had become so federal in character that they were amenable to suit under the APA, sometimes employing the term "quasi-federal agency" to describe such compact authorities.[2] *See, e.g., Seal & Co. v. Washington Metropolitan Area Transit Authority,* 768 F.Supp. 1150, 1155–56 (E.D.Va.1991) ("because of the strong 'federal interest' in the WMATA Compact, WMATA should be treated as a federal agency subject to the APA"); *Elcon Enterprises v. WMATA,* 977 F.2d 1472, 1479–80 (D.C.Cir.1992) (assuming without deciding, based in part on *Seal,* that WMATA should be treated as a federal agency); *Coal. for Safe Transit, Inc. v. Bi–State Dev. Agency,* 778 F.Supp. 464, 467 (E.D.Mo.1991) (" '[t]he degree of federal interest and participation in the Metro Link project' warranted a conclusion that Bi–State is a 'quasi-federal agency' " sub-

ject to APA review) (citing *Union Switch and Signal, Inc. v. Bi–State Dev. Agency, et al.,* No. 91–1401C(7) (E.D.Mo.1991) (unpublished memorandum)); *The Bootery, Inc. et al. v. Washington Metro. Transit Auth. et al.,* 326 F.Supp. 794, 799 (D.C Cir.1971) ("[i]n view of the federal interest in the Compact, there appears no reason why the general criteria for standing to challenge action under a federal statute should not be employed"); *Otis Elevator Co. v. Washington Metro. Transit Auth.,* 432 F.Supp. 1089, 1094 (D.C.Cir.1976) (same).

■ In dicta, both the Third and the Eighth Circuits (the latter in an unpublished opinion) have interpreted the above cases as identifying three factors "relevant to whether a compact authority warrants the quasi-federal agency classification: (1) whether the originating compact is governed, either explicitly or implicitly, by federal procurement regulations; (2)

---

only when the statute precludes judicial review, 5 U.S.C. § 701(a)(1), or if the 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a)(2)." *M&T Mortg. Corp. v. White,* No. 04 CV 4775, 2006 WL 47467, at *7 (E.D.N.Y. Jan. 9, 2006). Thus, ASMFC's argument that, had it so intended, Congress would have provided that the APA applies to ASMFC, does not imply that APA review of ASMFC actions is unavailable. By contrast, where Congress has intended that the APA should *not* apply to an interstate compact agency, it has expressly excluded the interstate compact entity from the APA definition of "agency." *See, e.g.,* William S. Morrow, Jr., The Case for an Interstate Compact APA, 29.2 Admin & Reg. L. News 12, 13 (2004) (listing examples of compact entities which Congress has expressly stated do not constitute federal agencies, including the Pacific Northwest Electric Power and Conservation Planning Council Compact, 16 U.S.C. § 839b(a)(2)(A); the Delaware River Basin Compact, § 15.1(m); and the Susquehanna River Basin Compact, § 2(1)).

2. ASMFC contends that there is "no support for the proposition that a right to review can be recognized without the normal requirement of specific congressional intent to create a private right.... To the extent dicta in two of the 'quasi-federal agency' cases may be read to support such a theory, it is plainly inconsistent with controlling precedent from the Supreme Court and the Second Circuit." Memorandum in Support of Defendant [ASMFC]'s Motion to Dismiss ("ASMFC Mem.") at 9. ASMFC is correct that congressional intent to create a private right of action is a necessary prerequisite to finding that such a right exists. *See, e.g., Alexander v. Sandoval,* 532 U.S. at 286, 121 S.Ct. 1511. The issue before the Court, however, is whether ASMFC functions as a quasi-federal agency, so that the private right of action Congress expressly created in the APA applies to ASMFC. Thus, the question of Congressional intent—essential where the issue is whether an implied right of action exists—is not as significant a factor where the issue, as here, is whether an express right of action is available to a given party or parties.

whether a private right of action is available under the compact; and (3) the level of federal participation[.]" *Am. Trucking Ass'n, Inc. v. Delaware River Joint Toll Bridge Comm'n*, 458 F.3d 291, 304 n. 10 (3d Cir.2006); *see also Heard Commc'ns, Inc. v. Bi–State Dev. Agency*, 18 Fed. Appx. 438, 439–40 (8th Cir.2001) (unpublished).

ASMFC argues that cases above are distinguishable from this case because they all concern transportation-related interstate compact agencies, which, unlike the Commission, deal directly with private parties in securing public works contracts. While it is true that the Commission's work is not related to transportation and does not entail direct dealings with private parties, ASMFC's decisions have no less impact on aggrieved fishermen and the businesses that serve them than the decisions of transport agencies have on aggrieved bidders for public contracts. ASMFC further argues that because some of the cases cited above discussed only whether the plaintiffs in those cases had standing to sue under a federal statute, and did not consider whether an implied private right of action existed under the relevant compact legislation, the cases are inapposite. The emphasis on standing, however, does not eliminate the usefulness of these cases. Prior analyses of the circumstances under which an interstate compact entity should be subject to APA review are instructive.

**B.** *Application of Quasi–Federal Agency Standards to ASMFC*

 Because the compact at issue here bears no relationship to federal procure-ment regulations, I do not consider the first factor identified in *American Trucking* and *Heard*.[3] With regard to the second factor, I have already determined that an implied right of action is not available under the ASMFC Compact. *See Gutierrez*, 2008 WL 5000493, at 11. Therefore, the analysis of whether the Commission qualifies as a quasi-federal agency turns on the most significant of the three factors: the level of federal participation in ASMFC.

 In determining the degree of federal participation in a compact agency, several considerations are relevant. Congressional approval of an interstate compact is one factor to be considered, *see, e.g., The Bootery*, 326 F.Supp. at 798–99, although this factor is not dispositive. *Old Town Trolley Tours v. Washington Metro. Area Transit Comm'n*, 129 F.3d 201, 204 (D.C.Cir.1997) (it does not follow from Congress' approval of compact that compact created federal agency governed by APA). Other factors bearing on the degree of federal participation include whether there is a federal role in appointing compact agency members, whether federal funding is authorized for the compact agency, and whether the compact furthers a federal objective. *See, e.g., Seal*, 768 F.Supp. at 1156–57; Morrow, *supra* n. 1, at 13. The federal participation inquiry is fact-intensive and case-specific; the presence of one or more federal participation factors does not automatically convert an entity created by interstate compact into a quasi-federal agency. *See, e.g., California Tahoe Regional Planning Agency v. Sahara Tahoe Corp.*, 504 F.Supp. 753, 762–63 (D.Nev.1980) (approval of the compact by

---

**3.** To the extent that this first factor concerns not federal procurement regulations specifically, but instead whether the interstate compact is governed explicitly or implicitly by a body of federal regulation, I note that, as further discussed below, the Fisheries Act imposes significant federal obligations on the ASMFC. *See, e.g., Gutierrez*, 2008 WL 5000493, at *2–3.

Congress and limited appointment power of president did not establish TRPA as federal agency).

In this case, as discussed in my previous opinion, the level of federal participation in the Commission is high. ASMFC was expressly authorized by Congress under the Compact Clause. *See* ASMFC Compact, Preamble. Congress' enactment of the Fisheries Act provided federal funding for the Commission, *see* 16 U.S.C. §§ 5107, 5108, and indeed, intervenor-plaintiffs have submitted evidence that over 90% of ASMFC's operating budget consists of federal funds. *See* Declaration of Philip L. Curcio, dated February 2, 2009, Ex. 1 (copy of 2006–2007 ASMFC operating budget from ASMFC's 2007 Annual Report).[4] The Fisheries Act imposes federal obligations on ASMFC, including the obligation to base FMPs on "the best scientific information available," 16 U.S.C. § 5104(2)(A), as well as to provide "adequate opportunity for public participation" in the FMP preparation process.[5] 16 U.S.C. § 5104(a)(2)(B). The ASMFC serves the federal objective of conserving and managing fishery resources in the United States, a goal expressed in the federal MSA. *See* 16 U.S.C. § 1801(a)(6); 16 U.S.C. § 5101(a)(6). Federal agencies directly participate in ASMFC deliberations and decisions: the NMFS and the United States Fish and Wildlife Service serve as voting Board members. *See* ISFMP Charter, § 4(b)(3).

The high level of federal participation in ASMFC does not, however, automatically transform ASMFC from an association of state representatives into a quasi-federal agency. By its own terms, the ASMFC Compact expressly states that "[n]othing in this compact shall be construed to limit the powers of any signatory state." ASMFC Compact, Art. IX. At the same time, the Fisheries Act renders FMPs prepared by the Commission binding on ASMFC member states. The Fisheries Act expressly requires each state identified in an FMP developed by the Commission to implement and enforce the FMP, usually through state-enacted laws or regulations. 16 U.S.C. §§ 5104(b)(1) ("Each State . . . shall implement and enforce the measures of such plan within the timeframe established in the plan"); 16 U.S.C. § 5102(10) ("The term 'implement and enforce' means to enact and implement laws or regulations as required to conform with the provisions of a coastal fishery management plan and to assure compliance with such laws or regulations by persons participating in a fishery that is subject to such plan"). Thus, ASMFC member states are bound by Commission decisions, which are controlled in part by federal standards. In addition, the Fisheries Act confers authority on the Commission to monitor a state's implementation and enforcement of

**4.** Although extrinsic evidence generally may not be considered on a Rule 12(b)(6) motion to dismiss, a court may consider documents a plaintiff relies on that are integral to the complaint, as well as public documents of which the plaintiff has notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991). Defendant ASMFC has not objected to plaintiff's submission of the ASMFC budget for the purposes of this motion.

**5.** In addition, at oral argument, counsel for intervenor-plaintiffs pointed out that federal regulations for the 2008 summer flounder federal conservation equivalency program provide that ASMFC, not NMFS or another federal agency, must establish state-by-state allocations delimiting the number of permissible recreational summer flounder landings in each state for the 2008 season. Fisheries of the Northeastern United States; Recreational Management Measures for the Summer Flounder, Scup, and Black Sea Bass Fisheries; Fishing Year 2008, 73 Fed.Reg. 29,993, 2008 WL 2148727 (May 23, 2008) (to be codified at 50 C.F.R. pt. 648).

Commission FMPs. 16 U.S.C. § 5104(c). If the Commission determines that a state is not in compliance with its FMP, the Commission is required to provide notice to the United States Secretary of Commerce. 16 U.S.C. § 5105. While it is true that the Secretary must make an independent determination that the FMP's measures are necessary for fishery conservation before taking action to enforce the Commission's FMP (namely, by imposing a fishing moratorium), this separation of the ASMFC's and the Secretary's powers appears more formal than substantive. It does not alter the fact that the Commission's FMPs are binding on the states, that the Commission monitors state compliance with its FMPs, and that the Commission's determination regarding a state's non-compliance is critical as to whether a moratorium on fishing will be imposed on that state. Considered together, these congressionally authorized activities rise to the level of de facto regulatory power exercised by ASMFC on behalf of the federal government. Given the high level of federal participation in ASMFC, the Commission's de facto regulatory power is sufficient to transform the Commission into a quasi-federal agency for the purposes of APA review.[6]

## C. *Federalism Concerns*

█ ASMFC argues that recognizing the Commission as a quasi-federal agency

and subjecting it to APA review runs contrary to general principles of federalism. First, ASMFC points out that interstate compact agencies are, in some cases, entitled to Eleventh Amendment immunity from suit.[7] *See Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 50–53, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). However, in *Hess,* the Supreme Court acknowledged the principle that where an agency's potential losses do not legally or practically burden a state's coffers, Eleventh Amendment concerns are not raised. *Hess,* 513 U.S. at 51, 115 S.Ct. 394 ("If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No'— both legally and practically—then the Eleventh Amendment's core concern is not implicated"). As previously mentioned, ASMFC receives over 90% of its funding from the federal government. There is no evidence before me that the Commission can or has ever operated at a loss capable of affecting its member States' treasuries. The present action seeks injunctive relief, not monetary damages. Accordingly, Eleventh Amendment concerns are not at issue here.

█ ASMFC also argues that general considerations of state sovereignty preclude a finding that the Commission is a

---

**6.** As previously noted, at least one legal commentator has adopted the view that the Commission is a quasi-federal agency. *See* Shaun M. Gehan, Atlantic States Marine Fisheries Commission & the Atlantic Coastal Fisheries Cooperative Management Act: Constitutional Issues and Availability of Judicial Review of Commission Regulations (Apr. 13, 2005) at 10, *available at* http://www.abanet.org/adminlaw/interstate/Gehan_ASMFC_Paper. pdf (last visited Nov. 13, 2008) ("It may well be, largely as a necessary outgrowth of the fact that the ACFCMA essentially 'federalizes' all fishery management plans and regulations

promulgated by the ASMFC, that the Commission is the epitome of a 'quasi-federal agency.' ")

**7.** The Eleventh Amendment to the United States Constitution recognizes the sovereign immunity of individual states and provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

quasi-federal agency that may be held accountable for its actions under the APA. According to ASMFC, the Commission is composed of state legislators, state executive officials, and state gubernatorial appointees, who coordinate traditional state police powers over natural resources—powers that the ASMFC Compact and Congress intended to preserve. Finding that the APA applies to ASMFC is inappropriate, ASMFC argues, where the states parties to the ASMFC never agreed to subject themselves to the APA.

I am not insensitive to this concern. As previously discussed, the ASMFC Compact expressly states that "[n]othing in this compact shall be construed to limit the powers of any signatory state." ASMFC Compact, Art. IX. Further, the Fisheries Act reaffirms the principle that individual states are primarily responsibly for management of fisheries in state waters:

"The responsibility for managing Atlantic coastal fisheries rests with the States, which carry out a cooperative program of fishery oversight and management through the Atlantic States Marine Fisheries Commission. It is the responsibility of the Federal Government to support such cooperative interstate management of coastal fishery resources."

16 U.S.C. § 5101(a)(4). These passages show that Congress intended to respect, not to restrict, the states' powers in the ASMFC Compact and related legislation. However, Congress' authorization of deliberate and substantial federal involvement

in the Commission cannot be ignored. The Fisheries Act imposes substantive obligations on the ASMFC, including the obligation to base its FMPs on the "best scientific information available" and to provide adequate opportunity for public participation in FMP formation. It renders those FMPs, which are based in part on federal standards, binding on the states parties to the Commission. Representatives of federal agencies cast votes in ASMFC Board meetings. The Commission's budget is over 90% federally funded. In light of this substantial federal involvement in the Commission, it is not unreasonable to conclude that, despite state sovereignty concerns, ASMFC should be treated as a "quasi-federal agency" and subjected to a private right of action under the APA.

Furthermore, were I to hold that ASMFC is not amenable to suit under the APA, any relief ultimately accorded to plaintiffs and intervenor-plaintiffs upon trial of the merits of this matter would be incomplete. Without ASMFC as a defendant, any decision rendered by this Court would not apply to state waters, where more than 90% of recreational summer flounder fishing takes place. This reality, taken together with the substantial federal participation in ASMFC, leads me to conclude that allowing ASMFC actions essentially to escape judicial review is inappropriate.[8]

### CONCLUSION

For the reasons set forth above, defendant ASMFC's motion is denied. The

---

8. Defendant ASMFC argues that these policy concerns are irrelevant here in light of the Supreme Court's holding that the existence of a private right of action does not turn on whether such a right would be "desirable ... as a policy matter." *Alexander v. Sandoval,* 532 U.S. 275, 287–88, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). As previously explained, however, my analysis here does not turn on

whether a private right of action should be implied from the ASMFC Compact or related legislation, but rather on whether the Commission has become so federal in character that it cannot escape the dispute resolution provisions of the APA, which Congress clearly intended to apply to federal agencies. Accordingly, I am not precluded from considering policy concerns.

Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

## MEMORANDUM OPINION AND ORDER

Plaintiffs the State of New York, Alexander B. Grannis as Commissioner of the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation (together, "plaintiffs"), along with intervenor-plaintiffs United Boatmen of New York, Inc. ("UBNY"), New York Fishing Tackle Trade Association, Inc. ("NYFTTA"), and the Fishermen's Conservation Association ("FCA") (together, "intervenor-plaintiffs"), bring this action against defendants Carlos Gutierrez, in his official capacity as Secretary of the United States Department of Commerce, the United States Department of Commerce, Conrad C. Lautenbacher, in his official capacity as Under Secretary of Commerce and Administrator for the National Oceanic and Atmospheric Administration, the National Oceanic and Atmospheric Administration, James W. Balsiger, in his official capacity as the Acting Assistant Administrator for the National Marine Fisheries Service, and the Atlantic States Marine Fisheries Commission (the "ASMFC" or "Commission"). Plaintiffs claim that the final management rule for the 2008 recreational summer flounder fishery issued by the Department of Commerce (the "DOC"), through the National Marine Fisheries Service (the "NMFS"), pursuant to the Magnuson–Stevens Fishery Conservation and Management Act, as amended in 1996 by the Sustainable Fisheries Act, 16 U.S.C. §§ 1801, *et seq.* (the "MSA"), violates the MSA as well as standards of decision making under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the

"APA"). In addition to these claims, intervenor-plaintiffs claim that that the final management rule for the 2008 recreational summer flounder fishery issued by the ASMFC violates the ASMFC Compact & Rules and Regulations, Pub.L. ·77–539 (1942), *as amended by* Pub.L. 81–721 (1950) ("ASMFC Compact"), the Atlantic Coastal Fisheries Cooperative Management Act, Pub.L. 103–206, 16 U.S.C. §§ 5101–5108 (the "ACFCMA" or "Fisheries Act"), the ASMFC Interstate Fisheries Management Program Charter (hereinafter "ISFMP Charter," *available at* http://www.asmfc.org (last visited Apr. 7, 2009)), and the APA.

On March 9, 2009, I denied defendant ASMFC's motion to dismiss the claims asserted against it in the Complaint in Intervention. *New York v. Gutierrez,* 623 F.Supp. 2d 301, 2009 WL 605830 (E.D.N.Y.2009). Presently before this Court is defendant ASMFC's motion for reconsideration of that decision, or in the alternative, for certification of my order holding that the ASMFC's decisions are subject to review under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"). For the reasons that follow, the motion for reconsideration is denied, and the request for certification of my order for interlocutory appeal is granted.

## BACKGROUND

Familiarity with the factual background of this matter is presumed based on the record of proceedings before the undersigned. For a description of the facts of this case, *see New York v. Gutierrez,* No. 08–CV–2503, 2008 WL 5000493 (E.D.N.Y. Nov. 20, 2008).

## DISCUSSION

I. *Motion for Reconsideration*

A. *Standard for Reconsideration*

▉▉▉ Civil motions for reconsideration in this District are governed by Federal

Rule of Civil Procedure 59(e) and Local Civil Rule 6.3. *U.S. v. James,* No. 02 CV 0778, 2007 WL 914242, at *3 (E.D.N.Y. Mar.21, 2007). While timely motions for reconsideration are permitted under Local Civil Rule 6.3, "[t]he standard for granting such ... motions is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d. Cir. 1995). Reconsideration is also appropriate if there is an intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 789 (2d Cir. 1983); *Bay Casino, LLC v. M/V Royal Empress,* No. 98–CV–2333, 1998 WL 566772, at *1 (E.D.N.Y. Aug. 21, 1998).

■ Local Civil Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 6.3 motion, courts will not allow a party to use the motion as a substitute for an appeal from a final judgment. *See Morser v. A.T. & T. Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). Accordingly, a party in its motion for reconsideration "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb,*

*Inc.,* No. 86–CV–6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug.4, 1989).

### B. Merits of Motion for Reconsideration

■ In its moving papers, ASMFC does not attempt to identify factual matters or controlling decisions I overlooked in my memorandum opinion denying its motion to dismiss. Nor does it submit new evidence, point to an intervening change in law, or allege that I committed clear error or that my decision resulted in manifest injustice. Instead, ASMFC simply reasserts arguments previously made during briefing of the underlying motion, including in particular: (1) that the absence of a statute conferring a private right of action against the Commission requires dismissal of all claims against the Commission, (2) that the APA's definition of "agency" does not include the Commission, and (3) that the doctrine of sovereign immunity shields the Commission from civil claims.[1] The second and third arguments were addressed in my memorandum opinion and order denying ASMFC's motion to dismiss, *see New York v. Gutierrez,* 623 F.Supp.2d 301, 307, 310–12, 2009 WL 605830, at *3, **6–7 (E.D.N.Y.2009), and the first argument was addressed both in the March 9, 2009 decision, *see id.* at 307, 2009 WL 605830 *3, and in my November 20, 2008 memorandum opinion and order permitting intervenor-plaintiffs to intervene and join ASMFC as a necessary party. *New York v. Gutierrez,* No. 08–CV–2503, 2008 WL 5000493, at *9–13 (E.D.N.Y. Nov. 20, 2008). The reassertion of arguments previously made and ad-

---

1. ASMFC also contends that permitting federal judicial review of ASMFC decisions will result in "serious harm" to the Commission because it necessarily impacts the process of negotiation and deliberation that characterizes the Commission's work. This assertion is not new to the record, *see* ASMFC Mem. In Supp. Of Mot. To Dismiss at 15–16, and constitutes at best a policy argument—not a legal ground—for shielding the Commission from judicial review. In any case, it does not entitle ASMFC to reconsideration of my prior order.

dressed by this Court does not constitute a ground upon which reconsideration may be granted. Accordingly, ASMFC's motion for reconsideration is denied.

## II. *Request for Certification*

In the alternative, ASMFC requests that I certify for interlocutory appeal to the Court of Appeals my March 9, 2009 order holding that the Commission is subject to federal judicial review under the APA.

### A. *Standard for Certification*

 The courts of appeals have jurisdiction of appeals from all "final decisions" of the district courts of the United States, except where a direct review may be had in the Supreme Court. 28 U.S.C. § 1291. In keeping with statutory law, appellate review of district court decisions is generally delayed until a final judgment has been entered. *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). The "denial of a motion to dismiss is ordinarily considered non-final, and therefore not immediately appealable." *Hill v. City of New York*, 45 F.3d 653, 659 (2d Cir. 1995). An exception to this general rule, however, is set forth in 28 U.S.C. § 1292(b), which provides for discretionary appeals of non-final orders. In addition, the Supreme Court has employed a "practical interpretation" of 28 U.S.C. § 1291 to exempt a small class of rulings from that statute's "final decision" rule, under what is known as the collateral order doctrine. *See, e.g., Will v. Hallock*, 546 U.S. 345, 349–50, 126 S.Ct. 952, 163 L.Ed.2d 836 (describing collateral order doctrine).

ASFMC requests certification for interlocutory appeal of my March 9, 2009 order (1) pursuant to the exception provided in 28 U.S.C. § 1292(b), on the issue of whether the APA affords intervenor-plaintiffs a private right of action against ASMFC;

and (2) under the collateral order doctrine, on the issue of whether the Commission is shielded from suit by Eleventh Amendment immunity. I address both grounds for certification in turn.

### B. *Certification Under 28 U.S.C. § 1292(b)*

#### 1. *Standard*

 Section 1292(b) allows discretionary appeals of non-final orders upon the consent of both the district court and the court of appeals. A district court may certify an order for interlocutory appeal when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). After the district court certifies an order for interlocutory appeal, the court of appeals has discretion whether or not to entertain the appeal. *See id.* ("The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order"); *Koehler*, 101 F.3d at 866 ("Section 1292(b) vests review of an interlocutory order within our discretion and we may decline at any time to decide the issue presented"). If the court of appeals chooses to hear the certified appeal, it "may assume jurisdiction over the entire order, not merely over the question as framed by the district court." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391–92 (2d Cir.2008) (citing *United States v. Stanley*, 483 U.S. 669, 676–77, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987)).

 The Second Circuit has held repeatedly that "use of this certification procedure should be strictly limited because only exceptional circumstances [will] justi-

fy a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996) (alteration in original) (internal quotation marks omitted); *see Koehler*, 101 F.3d at 865 ("Section 1292(b)'s legislative history reveals that although the law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 161 (E.D.N.Y.1999) ("As the court of appeals for the Second Circuit has repeatedly advised, section 1292(b) was designed to be a rarely used exception to the final judgment rule"); *see also Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) ("[W]e urge the district courts to exercise great care in making a § 1292(b) certification"). Even if the district court concludes that the three factors in § 1292(b) are met, the district court still has "unfettered discretion" to deny leave to appeal. *See Nat'l Asbestos*, 71 F.Supp.2d at 162 ("The legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met").

### 2. *Merits*

#### (i) *Controlling Question of Law*

 The first factor to consider in determining whether to certify my order pursuant to § 1292(b) is whether a "controlling question of law" exists. In determining whether a controlling question of law exists, "the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's

opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Primavera Familienstifung v. Askin*, 139 F.Supp.2d 567, 570 (S.D.N.Y. 2001) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24–25 (2d Cir.1990)).

My March 9, 2009 order permitted intervenor-plaintiffs to proceed with its claims against defendant ASMFC on the grounds that a right of action against the Commission exists under the APA. Because a determination by the Court of Appeals that such a right does not exist would result in dismissal of all claims against ASMFC and would significantly affect the conduct of the action, whether such a right of action exists qualifies as a "controlling question of law." As noted below, the case would, in any event, continue against the federal defendants. Nevertheless, for reasons previously noted, *see Gutierrez*, 2009 WL 605830, at *7, the scope of relief would be substantially narrowed if the case proceeds against the federal defendants only. Further, the quasi-federal agency theory upon which I based my reasoning is likely to have precedential value for other entities that might qualify as quasi-federal agencies. For these reasons, I conclude that my March 9, 2009 order involved a controlling question of law.

#### (ii) *Substantial Ground for Difference of Opinion*

 The second factor to consider is whether a "substantial ground for difference of opinion" exists as to the identified controlling question of law. To determine whether "the issue for appeal is truly one on which there is a substantial ground for dispute," a district court must "analyze the strength of the arguments in opposition to the challenged ruling." *In re Flor v. BOT Financial Corp.*, 79 F.3d 281, 284 (2d Cir.

1996). With respect to this factor, defendant ASMFC argues as follows:

> [G]iven that no statute explicitly authorizes suit against the Commission; that the APA explicitly defines covered "agencies" as authorities of the United States government; and that the rules of construction governing private rights of action and federalism both demand a clear statement from Congress, we submit that there is at least a "substantial ground for difference of opinion" concerning whether Plaintiffs–Intervenors have a right to proceed against the Commission.

Def. ASMFC Mem. In Supp. Of Mot. For Recons. at 12. Intervenor-plaintiffs have not opposed this argument in their submission in opposition to this motion.

My March 9, 2009 order involved an issue of first impression in this circuit, in a case involving strong legal arguments and equitable considerations in favor of both sides' positions. While I determined that ASMFC could not escape review under the APA because the substantial level of Congressional participation in the Commission effectively transformed it into a quasi-federal agency, I recognize that in light of defendant ASMFC's counter-arguments above, reasonable minds could differ as to the merits of this conclusion. Accordingly, I agree that a substantial ground for a difference of opinion exists here.

### (iii) *Material Advance in the Ultimate Termination of the Litigation*

The third factor I must consider is whether certifying my March 9, 2009 order would materially advance the ultimate termination of the litigation. Defendant ASMFC points out that if the Court of Appeals were to reverse my order, the claims against it would necessarily be dismissed. Therefore, it argues, the ultimate termination of litigation would be material-ly advanced by certification because an entire category of claims would no longer require trial. Intervenor-plaintiffs argue that because the claims against the federal defendants would necessarily continue even if the claims against ASMFC are dismissed, certification would not material-ly advance the termination of this litigation.

In *Bilello v. JPMorgan Chase Retirement Plan*, faced with somewhat similar circumstances, Judge Cote held as follows:

> Bilello argues that a reversal on the question of his statutory standing would nonetheless not "materially advance the ultimate termination of the litigation" because, among other reasons, some of the counts in the complaint would survive, as they do not arise under ERISA Section 502(a). Plaintiff's argument reads the phrase "materially advance" out of the statute, arguing that only an issue that entirely disposes of a lawsuit merits interlocutory review.
>
> Finding that Bilello lacked standing would "avoid protracted litigation." *Koehler,* 101 F.3d at 866. It would terminate nearly all of Bilello's claims, any possibility of class certification, and diminish any possible recovery to a small fraction of what it is should his nine class-wide claims survive a motion to dismiss. It would therefore materially advance the ultimate termination of the litigation.

*Bilello v. JPMorgan Chase Ret. Plan,* No. 07 Civ. 7379, 2009 WL 585974, at *2 (S.D.N.Y. Mar. 9, 2009). Here, certification and reversal of the order allowing intervenor-plaintiffs to proceed against ASMFC would result in dismissal of all claims against ASMFC, eliminating the only non-federal defendant and all state law issues from the case. It would also substantially narrow the scope of potential relief available to plaintiffs. Accordingly, I

conclude that certification would materially advance the ultimate termination of this litigation.

Given that the three requirements for certification under 28 U.S.C. § 1292(b) are satisfied here, I may exercise my discretion to certify the March 9, 2009 order for interlocutory appeal on the issue of whether the APA affords intervenor-plaintiffs a private right of action against ASMFC.

## C. *Certification Under the Collateral Order Doctrine*

### 1. *Standard*

▉▉▉▉ Under the collateral order doctrine, a non-final judgment is immediately appealable if it:

> fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To appeal an order before final judgment pursuant to the collateral order doctrine, three "stringent" conditions must be satisfied: the order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from final judgment." *Will v. Hallock,* 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006).

The Supreme Court has recognized that interlocutory orders denying claims of absolute immunity fall into the "small class" of cases contemplated in *Cohen. Nixon v. Fitzgerald,* 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) ("A[t] least twice before this Court has held that or-

ders denying claims of absolute immunity are appealable under the *Cohen* criteria") (citations omitted). This is so because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citations omitted). *See generally* 15A Wright, Miller & Cooper, Federal Practice & Procedure, § 3911 (2d ed.1992).

As the Second Circuit has noted, "Eleventh Amendment immunity is a form of absolute immunity." *Morris–Hayes v. Bd. of Educ. of Chester Union Free School Dist.,* 423 F.3d 153, 162 (2d Cir.2005). Accordingly, in *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* where the Supreme Court was confronted with the question of whether "a district court order denying a claim by a State or a state entity to Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine of [*Cohen* ]," the Court answered the question in the affirmative. *Id.* (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–43, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). The Second Circuit has applied the *Metcalf & Eddy* rule in several cases. *See, e.g., Farricielli v. Holbrook,* 215 F.3d 241, 244 (2d Cir.2000) (citing *Metcalf & Eddy* and stating "[a]lthough this case is still pending in the district court, we have jurisdiction to hear this appeal because an order denying immunity under the Eleventh Amendment is immediately appealable"); *see also In re Charter Oak Assocs.,* 361 F.3d 760, 764 (2d Cir.2004) (citing *Metcalf & Eddy* for the general proposition that denial of sovereign immunity is immediately appealable under the collateral order doctrine).

### 2. *Merits*

▉▉ Defendant ASMFC claims that it is entitled to immediate appeal as of right

under the collateral order doctrine because my March 9, 2009 order denied its claim of sovereign immunity. There is no dispute that a denial of a claim of sovereign immunity resolves "an important issue completely separate from the merits of the action," which is "effectively unreviewable on appeal from final judgment," *Hallock*, 546 U.S. at 349, because it denies the possessor's "entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 472 U.S. at 525; *see also Puerto Rico*, 506 U.S. at 142–43. However, intervenor-plaintiffs argue that my order did not "conclusively determine" that ASMFC is not entitled to the defense of sovereign immunity, and therefore, that ASMFC may not seek certification of my order pursuant to the collateral order doctrine.

Given that prior to the briefing of this motion for reconsideration and/or certification, defendant ASMFC raised the issue of sovereign immunity in a fairly cursory manner in only one paragraph of its memorandum in support of its motion to dismiss, *see* Def. ASMFC Mem. In Supp. Of Mot. To Dismiss at 25, intervenor-plaintiffs' argument is somewhat understandable. However, the fact remains that I considered ASMFC's claim to sovereign immunity under the Eleventh Amendment in my memorandum opinion and order of March 9, 2009, *see Gutierrez*, 2009 WL 605830 at *6, and I ultimately denied ASMFC's motion to dismiss. By permitting intervenor-plaintiffs' claims against ASMFC to proceed, I "conclusively determined" that ASMFC is not entitled to the defense of sovereign immunity.

Accordingly, having determined that the prerequisites for certification under the collateral order doctrine are present here, the question of whether defendant ASMFC is entitled to the defense of sovereign immunity should be and hereby is certified for interlocutory appeal.

## CONCLUSION

For the reasons set forth above, defendant ASMFC's motion for reconsideration is denied, and its request for certification is granted. The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.