# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3455

_____

Heard Communications, Inc.,
d/b/a Gateway Outdoor
Advertising,

        Appellant,

Obie Media Corporation,

        Intervenor,

v.

Bi-State Development Agency,

        Appellee.

\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Missouri
\*
\*     [UNPUBLISHED]

_____

Submitted:   April 9, 2001
Filed:   August 31, 2001

_____

Before McMILLIAN and LOKEN, Circuit Judges, and GOLDBERG,[1] Judge.

_____

PER CURIAM.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Appellant, Heard Communications, Inc., d/b/a Gateway Outdoor Advertising ("Gateway") appeals the decision of the district court[2] to dismiss all claims against Appellee Bi-State Development Agency ("Bi-State") for lack of subject matter jurisdiction and for failure to state a cause of action. We affirm the decision of the district court.

Bi-State is a body corporate and politic created in 1949 through a compact between Missouri and Illinois. The United States Congress ratified and approved the compact. Bi-State operates the public transportation system for the three-county, multi-state metropolitan region surrounding the city of St. Louis, Missouri.

On January 19, 1999, Bi-State published a request for proposals from advertising agencies for the exclusive right to sell and display transit advertising for Bi-State. Gateway submitted a proposal, but Bi-State ultimately awarded the contract to Obie Media Corporation ("Obie"). Gateway alleged misconduct in the handling of the bid process and eventually brought suit against Bi-State under the Federal Administrative Procedure Act ("APA"). Gateway filed a complaint with the district court, claiming that Bi-State's award decision was arbitrary and capricious. Obie intervened in the case.

Following discovery, both parties moved for summary judgment. Before reaching the merits, however, the district court, on its own motion, requested the parties to brief the issue of whether the APA applied to Bi-State. On August 25, 2000, the district court dismissed Gateway's complaint for lack of subject matter jurisdiction and for failure to state a cause of action. The district court found that the APA did not apply because in this case Bi-State was not a quasi-federal agency. Gateway now appeals the district court's decision to dismiss for lack of subject

_____

[2] The Honorable Charles A. Shaw, District Judge, United States District Court for the Eastern District of Missouri.

matter jurisdiction.

After careful review, we agree with the district court that under these circumstances Bi-State is not a quasi-federal agency subject to the APA. The district court properly analyzed the facts of the case. In making its decision the district court thoughtfully considered the reasoning utilized by other district courts. See Seal and Co., Inc. v. Washington Metro. Area Transit Auth., 768 F. Supp. 1150 (E.D. Va. 1991) (holding that transit authority created by compact between Virginia, Maryland and the District of Columbia, and approved by Congress, may be considered a quasi-federal agency); Union Switch and Signal, Inc. v. Bi-State Dev. Agency, et al., No. 91-1401C(7) (E.D. Mo. 1991) (holding that Bi-State is a quasi-federal agency subject to the APA). We now affirm the district court's decision and adopt its reasoning.

The district courts in Seal and Union Switch held that a court considering quasi-federal agency classification should consider three factors. See Seal, 768 F. Supp. at 1155-57; Union Switch, at 1-7. First, a court should consider whether the originating compact is governed, either explicitly or implicitly, by federal procurement regulations. See Union Switch, at 5-6 (citing Seal, 768 F. Supp. at 1156). Second, a court should consider whether a private right of action is available under the compact. See id. at 6 (citing Seal, 768 F. Supp. at 1156). Finally, a court should look to the level of federal participation. See id. (citing Seal, 768 F. Supp. at 1156-57).

According to the court in Union Switch, the level of federal participation can be ascertained by looking to the creation of the compact and the level of federal funding. See Union Switch, at 6-7. The court in Seal indicated that federal participation can also be determined by considering whether Congress was a party to the original compact, as opposed to simply approving it, and whether the compact replaces a federal agency. See Seal, 768 F. Supp. at 1557.

The court in <u>Union Switch</u> made clear that it was not employing a bright-line test and that future courts should consider quasi-federal agency classification on a case-by-case basis. <u>See</u> <u>Union Switch</u>, at 7-8.[3]

We have considered the standard articulated by the district courts in both <u>Union Switch</u> and <u>Seal</u>. We agree with the district courts and adopt the test and underlying analysis.

Here, the district court considered these criteria in determining that, in this instance, Bi-State is not a quasi-federal agency. First, the district court determined that although Bi-State does receive federal funds, no federal funds are implicated by this particular contract.[4] Second, the district court pointed out that although Congressional approval of an interstate compact can be a factor in determining quasi-agency status, it is not a dispositive factor. <u>See</u> <u>Old Town Trolley Tours v. Washington Metro Area Transit Commission</u>, 129 F.3d 201, 204 (D.C. Cir. 1997) ("While the [Congressionally approved] Compact may be treated as a federal law, it does not follow that the Commission is a federal agency governed by the Administrative Procedure Act."). Third, the district court noted that federal procurement process had limited involvement here, only being implicated with a compact provision for Federal Transit Administration review of protests of Bi-State

---

[3] The court in <u>Union Switch</u> went to great lengths to limit its classification of Bi-State. The court stated that its "holding is limited to this project, to these parties, and to these facts. It is not a general assertion that Bi-State, in other situations, qualifies as a quasi-federal agency." <u>Union Switch</u>, at 7.

[4] Gateway argues that federal funds are implicated in this instance because the federal government provides annual grants to Bi-State. When considering funding, however, the court in <u>Union Switch</u> considered whether the federal government funded the subject contract (Metro Link), rather than the organization as a whole (Bi-State). <u>See</u> <u>Union Switch</u>, at 6. Here, likewise, the district court considered funding for the advertising project, not for Bi-State as a whole.

protest procedures.  See id.  Finally, the district court noted that the Bi-State compact did not create any federal cause of action.

It is true, as Gateway argues, that the court in Union Switch previously determined that Bi-State was a federal agency under the APA.  See Union Switch, at 7-8.  Here, however, the district court properly distinguished Union Switch from the instant case by focusing on Bi-State's use of federal funding in the context of the advertising campaign.  Whereas the court in Union Switch heavily relied on the amount of funding Bi-State received from the Federal government, in the instant case the district court found that "Bi-State will not expend federal funds to the successful bidder for execution of the contract."  The district court also pointed out that the court in Union Switch relied on Bi-State's compliance with federal contract procurement procedure.  In this case, however, the district court made clear that federal procurement procedures were only implicated in the event of a protest.

Thus, we agree with the analysis employed by the district court and adopt its holding.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.