09-1594-cv
United Boatmen of New York, Inc. et al. v.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: March 9, 2010                    Decided: June 29, 2010)

Docket No. 09-1594-cv

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL CONSERVATION,
and ALEXANDER B. GRANNIS,

*Plaintiffs*,

UNITED BOATMEN OF NEW YORK, INC., NEW YORK
FISHING TACKLE TRADE ASSOCIATION, INC., and
FISHERMEN'S CONSERVATION ASSOCIATION,

*Intervenor-Plaintiffs-Appellees*,

—v.—

ATLANTIC STATES MARINE FISHERIES COMMISSION,

*Defendant-Appellant*,

GARY LOCKE, UNITED STATES DEPARTMENT OF
COMMERCE, CONRAD C. LAUTENBACHER, NATIONAL
OCEANIC AND ATMOSPHERIC ADMINISTRATION, and
JAMES W. BALSIGER,

*Defendants.*[*]

---

[*] The Clerk of the Court is directed to amend the
official caption as set forth above.

Before:  LEVAL, SACK, and WESLEY, *Circuit Judges*.

Interlocutory appeal from an order of the United States District Court for the Eastern District of New York (Sifton, J.), entered on March 9, 2009, denying the Atlantic States Marine Fisheries Commission's motion to dismiss the complaint in intervention and certifying to this Court the question of whether the Atlantic States Marine Fisheries Commission is subject to suit under the Administrative Procedure Act.  We hold that the Atlantic States Marine Fisheries Commission is not a federal agency within the meaning of the Administrative Procedure Act.  We further hold that, assuming its validity, the "quasi-federal" agency doctrine is inapplicable to the facts of this dispute. Consequently, intervenor-plaintiffs cannot maintain a cause of action against the Commission under the Administrative Procedure Act.

REVERSED and REMANDED.

SEAN H. DONAHUE, Donahue & Goldberg, LLP, Washington, D.C., *for Appellant*.

SHAUN M. GEHAN, Kelley Drye & Warren LLP, Washington, D.C. (Philip L. Curcio, Melville, N.Y., *on the brief*), *for Appellees*.

WESLEY, *Circuit Judge*:

For 68 years, the Atlantic States Marine Fisheries Commission ("ASMFC" or the "Commission") has endeavored to promote the utilization and protection of the fisheries of the Atlantic seaboard.  The Commission is the product of a congressionally approved interstate compact authorized by Article I, § 10, clause 3 of the United States Constitution.

This interlocutory appeal requires us to determine whether the intervenor-plaintiffs, United Boatmen of New York, Inc., New York Fishing Tackle Trade Association, Inc., and the Fishermen's Conservation Association (collectively "intervenor-plaintiffs" or "United Boatmen"), may assert a claim under section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"), to seek judicial review of the Commission's decisions.

In essence, the premise of United Boatmen's complaint in intervention is a simple one: intervenor-plaintiffs maintain that the Commission is more than a congressionally authorized state cooperative agreement. In the view of the intervenor-plaintiffs, ASMFC is a federal agency, or at least acts so much like one that we should treat it as one for purposes of the APA.

We hold that the ASMFC is not a federal agency within the meaning of the APA; it is not an "authority of the [g]overnment of the United States." 5 U.S.C. § 701(b)(1). We further hold that, in this case, the "quasi-federal" agency doctrine should not be used to expand the statutory definition of an agency under the APA. Thus, United Boatmen are not entitled, pursuant to 5 U.S.C. § 702, to seek

3

judicial review of the actions of the Commission. We therefore reverse and remand this matter to the district court for further proceedings consistent with the opinion of this Court.

## I. BACKGROUND

This case arises from disputes over the management of the summer flounder fishery off of the Atlantic coast. In response to a decrease in the stock of summer flounder, also known as fluke, regulatory "efforts have been made to conserve and restore the population." *Connecticut v. U.S. Dep't of Commerce*, 204 F.3d 413, 414 (2d Cir. 2000). The Atlantic seaboard states retain primary authority over the conservation and management of fisheries within the "territorial sea" — waters within three miles of shore, as well as in rivers and estuaries. The federal government is responsible for regulation of the "exclusive economic zone" — waters from three to 200 miles from shore. *See* 16 U.S.C. §§ 1801(b)(1), 1856(a), 5102(6); *see also Sea Hawk Seafoods, Inc. v. Locke*, 568 F.3d 757, 760 (9th Cir. 2009); *United Boatmen v. Gutierrez*, 429 F. Supp. 2d 543, 546 (E.D.N.Y. 2006).

The facts and procedural history of this controversy are set out in detail in the opinions of the district court. *See New York v. Gutierrez*, No. 08 Civ. 2503 (CPS) (RLM), 2008 WL 5000493, at *1-4 (E.D.N.Y. Nov. 20, 2008); *see also New York v. Locke*, No. 08 Civ. 2503 (CPS) (RLM), 2009 WL 2413463, at *1-2 (E.D.N.Y. Aug. 3, 2009); *New York v. Locke*, No. 08 Civ. 2503 (CPS) (RLM), 2009 WL 1194085, at *1-7 (E.D.N.Y. Apr. 30, 2009)*; New York v. Gutierrez*, 623 F. Supp. 2d 301, 305-06 (E.D.N.Y. 2009). A brief review of the facts and history of this case is all that is needed to provide context for our decision.

This suit was commenced by the State of New York, the Commissioner of the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation (collectively "New York State plaintiffs"), against the Secretary of the United States Department of Commerce, the United States Department of Commerce, the Under Secretary of Commerce and Administrator for the National Oceanic and Atmospheric Administration, the National Oceanic and Atmospheric Administration, and the Acting Assistant Administrator for the National Marine Fisheries Service (collectively "federal

5

defendants").[1]  The New York State plaintiffs contend that the final management rule for the 2008 recreational summer flounder fishery violates the Magnuson-Stevens Fishery Conservation and Management Act, as amended in 1996 by the Sustainable Fisheries Act, 16 U.S.C. § 1801 *et seq.* (the "MSA"), and the APA, 5 U.S.C. § 706(2)(A).[2]

Intervenor-plaintiffs in this action are private groups

---

[1] As a result of this Court's holding, intervenor-plaintiffs' claims against ASMFC must be dismissed.  The New York State plaintiffs' suit against the federal defendants will continue in the district court.  *See* 623 F. Supp. 2d at 316.  On July 24, 2009, the New York State plaintiffs filed a complaint challenging the management measures for the 2009 summer flounder season.  *New York v. Locke*, 09 Civ 3196 (NG) (RLM) (E.D.N.Y. July 24, 2009).  In this iteration of the litigation, the New York State plaintiffs named as defendants both the federal defendants and the ASMFC.

[2] On March 4, 2010 counsel for the New York State plaintiffs sent a letter to the district court arguing that "[b]ecause the same issues underlying this action are recurring, . . . the expiration of the 2008 management measures has not rendered [the case] moot."  Letter to the Honorable Nina Gershon by Alexander B. Grannis, New York State Department of Environmental Conservation, *Grannis, et al. v. Locke, et al.*, 08 Civ. 2503 (E.D.N.Y. Mar. 4, 2010) (Gershon, J.) (D. Ct. Doc. No. 148).  Although the 2008 management measures have expired, we agree that because "(1) the challenged action [is] in its duration too short to be fully litigated prior to its . . . expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again," the controversy is not moot.  *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) (alterations in original).

6

who maintain that the New York State plaintiffs failed to adequately represent their interests in defining the scope of their suit.  United Boatmen of New York, Inc. is a professional trade organization that represents the for-hire fishing vessel industry in New York.  Members of United Boatmen derive a substantial portion of their revenue from sport fishing for summer flounder.  The New York Fishing Tackle Trade Association, Inc. is a professional trade organization that represents the wholesale and retail bait and tackle dealer industry in New York.  The Fishermen's Conservation Association is a non-profit organization whose members are individual recreational anglers who target, among other species, summer flounder in state and federal waters contiguous to New York State.

In 1942, the ASMFC was created by a congressionally approved interstate compact ("ASMFC Compact").  *See* Pub. L. No. 77-539, 56 Stat. 267 (1942), *as amended by* Pub. L. No. 81-721, 64 Stat. 467 (1950); *see also* U.S. Const. art. I, § 10, cl. 3.  The purpose of the Compact "is to promote the better utilization of the fisheries . . . of the Atlantic seaboard" through a "joint program for the promotion and protection of such fisheries."  ASMFC Compact, art. I.  The

7

Compact specifically provides that it shall not "be construed to limit the powers of any signatory state or to repeal or prevent the enactment of any legislation or the enforcement of any requirement by any signatory state imposing additional conditions and restrictions to conserve its fisheries." ASMFC Compact, art. IX.

Each member state appoints three representatives to the Commission.[3] ASMFC Compact, art. III. The Compact requires that these representatives be the state's director of marine fisheries, a state legislator, and a citizen with knowledge relevant to the regulation of marine fisheries. *Id.* The signatories to the ASMFC "exercise joint regulatory oversight of their fisheries through the development of interstate fishery management plans." *R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 46 (1st Cir. 2009); *accord Medeiros v. Vincent*, 431 F.3d 25, 27 (1st Cir. 2005). From the inception of the ASMFC until

---

[3] The ASMFC Compact was ratified by Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, Florida, Pennsylvania, and the District of Columbia. ASMFC Compact, arts. II, XII, § 2; *see also R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 46 (1st Cir. 2009).

8

1993, participation in the interstate fishery management plans adopted by the Commission was voluntary. *Medeiros*, 431 F.3d at 27. Consequently, "compliance was spotty." *Id.*

In 1993, Congress adopted the Atlantic Coastal Fisheries Cooperative Management Act, 16 U.S.C. §§ 5101-5108 (the "ACFCMA"), in order to give the ASMFC some "teeth." *R.I. Fishermen's Alliance*, 585 F.3d at 46. Congress sought to accomplish this goal by mandating state participation in the interstate fishery management plans promulgated by the Commission. 16 U.S.C. § 5104(a)(1). Pursuant to the ACFCMA, a plan must "specify the requirements necessary for [s]tates to be in compliance," and the ASMFC must "identify each [s]tate that is required to implement and enforce that plan." *Id.* The Commission is obligated to review member states' "implementation and enforcement of coastal fishery management plans" and "report the results of the reviews" to the Secretary of Commerce. *Id.* § 5104(c).

Under the ACFCMA, the Secretary of Commerce is empowered to make an independent finding regarding whether a state has failed to implement management measures and, if so, "whether the measures that the [s]tate has failed to implement and enforce are necessary for the conservation of

9

the fishery in question." *Id.* § 5106(a)(2). If the Secretary makes a determination of noncompliance with respect to "necessary" measures, he or she "shall declare a moratorium on fishing in the fishery in question within the waters of the noncomplying [s]tate." *Id.* § 5106(c)(1).

The congressional findings accompanying the ACFCMA note that "[b]ecause no single governmental entity has exclusive management authority for Atlantic coastal fishery resources, harvesting of such resources is frequently subject to disparate, inconsistent, and intermittent [s]tate and [f]ederal regulation that has been detrimental to the conservation and sustainable use of such resources." *Id.* § 5101(a)(3). The ACFCMA explicitly affirms, however, that the "responsibility for managing Atlantic coastal fisheries rests with the [s]tates, which carry out a cooperative program of fishery oversight and management through the Atlantic States Marine Fisheries Commission." *Id.* § 5101(a)(4).

On July 16, 2008, United Boatmen moved to intervene in the action commenced by the New York State plaintiffs and to join the Commission as a defendant. *See* 2008 WL 5000493, at *5-14. The court granted United Boatmen's motion and

10

"decline[d] to limit the scope of [United Boatmen's] intervention to the parties and issues asserted in [the New York] plaintiffs' complaint."[4] *Id.* at *13. The court concluded that the New York State plaintiffs' "failure to join ASMFC as a defendant constituted nonfeasance," *id.*, sufficient to rebut the presumption of adequate representation present when a state brings suit in its capacity as *parens patriae*, *see, e.g.*, *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 984-85 (2d Cir. 1984); *see also United States v. City of N.Y.*, 198 F.3d 360, 367 (2d Cir. 1999). Following the district court's decision, intervenor-plaintiffs filed their complaint in

[4] The district court improperly concluded that the ASMFC was subject to joinder, by motion of the intervenor-plaintiffs, pursuant to Federal Rule of Civil Procedure 19(a)(1)(A). "Except in extraordinary cases, . . . intervenors may only join issue on a matter that has been brought before the court by another party[.] They cannot expand the proceedings." *Lamprecht v. Fed. Commc'n Comm'n*, 958 F.2d 382, 389 (D.C. Cir. 1992) (internal quotation marks and citations omitted). United Boatmen's motion should have been evaluated under Federal Rule of Civil Procedure 15(c). Nonetheless, the "general rule that an intervening party may join issue only on a matter that has been brought before the court by another party" is only a "prudential restraint," and therefore does not impair this Court's ability to reach the questions certified for interlocutory review. *Synovus Fin. Corp. v. Bd. of Governors of the Fed. Reserve Sys.*, 952 F.2d 426, 434 (D.C. Cir. 1991) (internal quotation marks and brackets omitted).

intervention on December 19, 2008.

ASMFC brought a motion to dismiss United Boatmen's complaint in intervention for failure to state a claim. 623 F. Supp. 2d at 306; *see also* Fed. R. Civ. P. 12(b)(6). In support of its motion to dismiss, ASMFC pointed out that neither its governing Compact[5] nor any federal statute provide a private right of action to seek judicial review of its regulatory decisions.[6] More importantly for purposes of this litigation, the Commission maintained that the provisions of the APA, which provide a right of action

---

[5] By contrast, other interstate compacts do provide for judicial review. *E.g.*, Washington Metropolitan Transit Regulation Compact, Pub. L. No. 101-505, art. XIII, § 5(a), 104 Stat. 1300, 1312 (1990); Tahoe Regional Planning Compact, Pub. L. No. 96-551, art. VI(j)(3), 94 Stat. 3233, 3247 (1980); Northeast Dairy Compact, § 16(C), S.J. Res. 28, 104th Cong. (1995).

[6] The district court properly rejected the idea that United Boatmen could avail themselves of an implied right of action. *Gutierrez*, 2008 WL 5000493, at *9. "[T]he Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor." *Hallwood Realty Partners, LP v. Gotham Partners, LP*, 286 F.3d 613, 618 (2d Cir. 2002). An implied private right of action exists only if Congress intended to create such a right. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). In looking to the "text and structure," *id.* at 288, of the ASMFC Compact and the ACFCMA, we find no exception to the ordinary rule is warranted. On appeal, United Boatmen do not seek to imply a cause of action from the ASMFC Compact or the ACFCMA.

12

against federal agencies, 5 U.S.C. §§ 701(b)(1), 702, do not apply to action by an interstate compact entity.[7]

The district court denied ASMFC's motion to dismiss. 623 F. Supp. 2d at 305. The court concluded that intervenor-plaintiffs could maintain a claim against the Commission under section 702 of the APA based on the theory that the Commission is a "quasi-federal" agency. *Id.* at 311. In so holding, the district court concluded that "allowing ASMFC['s] actions essentially to escape judicial review [would be] inappropriate." *Id*. at 312. The district court then granted the Commission's request for certification of its order for interlocutory appeal. 28 U.S.C. § 1292(b). A panel of this Court granted leave to appeal the interlocutory order of the district court.

On appeal, the Commission advances largely the same

---

[7] In support of its motion to dismiss, the Commission also made an alternative argument that it should be accorded Eleventh Amendment immunity from suit. The district court rejected this argument. 623 F. Supp. 2d at 311; *see also Alabama v. N. Carolina*, No. 132-orig, 2010 WL 2160786, at *15 n.5 (June 1, 2010); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 40-41 (1994); *Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009). In light of our determination that the Commission is not subject to suit under the APA, we decline to address the district court's sovereign immunity ruling.

13

arguments that it did before the district court. Essentially, ASMFC argues that intervenor-plaintiffs' complaint should be dismissed as it pertains to the Commission because it is not a federal agency; therefore, intervenor-plaintiffs may not seek review of the Commission's fishery management decisions under the APA. By contrast, intervenor-plaintiffs urge us to affirm the district court's determination that the Commission is a "quasi-federal" agency subject to suit under the APA. Intervenor-plaintiffs also suggest that this Court take an even stronger position than the one adopted by the district court and find that the Commission is actually a federal agency for the purpose of regulating coastal fishing activities. We hold that the Commission is not subject to suit by United Boatmen under the APA.

## II. DISCUSSION

The coverage of the APA, including its judicial review provisions, is governed by the statutory definition of the term "agency." Thus, we must first look to the text, *see Sec. & Exch. Comm'n v. Dorozhko*, 574 F.3d 42, 46 (2d Cir. 2009), of section 701(b)(1), which provides a definition of this term. *See Bailey v. United States*, 516 U.S. 137, 144

(1995). Other authorities have "characteriz[ed] the APA definition as 'not very satisfactory.'" *Lee Constr. Co., Inc. v. Fed. Reserve Bank*, 558 F. Supp. 165, 173 (D. Md. 1982) (quoting 1 K. Davis, *Administrative Law Treatise* § 1.01, at 1 & n.1 (1958)); *see also Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971) (stating the APA's "statutory definition of 'agency' is not entirely clear"). We agree that we cannot say that the meaning of agency as defined by the APA is so "plain on its face" as to end our inquiry. *E.g.*, *Barscz v. Dir., Office of Workers' Comp. Programs & Elec. Boat Corp.*, 486 F.3d 744, 749 (2d Cir. 2007). While this may not be a case where our "inquiry should end" with the text, *but see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989), the text of the APA does provide significant guidance.

Examination of the definition of a federal agency, as provided by the APA, reveals that the ASMFC Compact does not fall within the scope of the statute. In reaching this conclusion, "[w]e consider not only the bare meaning of [the] word" agency, *Bailey*, 516 U.S. at 145, but also the purpose of the APA and the structure and function of the

15

Commission.  We further hold that, assuming the validity of the "quasi-federal" agency doctrine, even on its own terms, it does not apply to the Commission.

**A.   The Statutory Definition of Agency Does not Encompass the Commission**

The provisions of the APA "provide[] the statutory structure upon which federal administrative law is built." *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1012 (9th Cir. 2000) (internal quotation marks omitted and alteration in original).  The APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  Under the APA the term "agency" is defined as an "authority of the [g]overnment of the United States."  5 U.S.C. § 701(b)(1); *see also Old Town Trolley Tours of Wash., Inc. v. Wash. Metro. Area Transit Comm'n*, 129 F.3d 201, 204 (D.C. Cir. 1997).  Despite this express definition, courts that have wrestled with its application have declared that the "law on the simple question of what is an agency is quite complex." *McKinney v. Caldera*, 141 F. Supp. 2d 25, 31 (D.D.C. 2001) (quoting *Lee Constr. Co.*, 558 F. Supp. at 172).  These courts have

16

emphasized "the need to examine the structure, function, and mandate" of the entity in question in determining whether it falls within the definition set out in the APA. *Id.* at 33; *see also Wash. Research Project, Inc. v. Dep't of Health, Educ. & Welfare*, 504 F.2d 238, 245-46 (D.C. Cir. 1974).

The APA definition expressly excludes certain entities, such as Congress and the federal courts. 5 U.S.C. § 701(b)(1)(A)-(B); *see also id.* § 701(b)(1)(C)-(H). Although an interstate compact entity is not specifically exempted from the definition, this "textual silence, when read against the backdrop of . . . the canons of construction applicable to statutes that implicate the separation of powers, points," *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991), to the conclusion that the ASMFC is not a federal agency within the meaning of the APA. "It is axiomatic that the statutory definition of the term excludes unstated meanings of that term." *Meese v. Keene*, 481 U.S. 465, 484 (1987); *see also Day v. Shalala*, 23 F.3d 1052, 1064 & n.12 (6th Cir. 1994) (concluding that a state entity administering a federal program was not subject to the requirements of the APA because the APA applies only to

17

federal agencies).  In any event, the statutory exclusions from the coverage of the APA applies only to bodies that would otherwise be "authorit[ies] of the [g]overnment of the United States."  5 U.S.C. § 701(b)(1).  We find that the Commission is not such an authority.

The wording of section 701(b)(1) indicates that we should not give the definition of "agency" a more expansive reading.  *See United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1981).  The text of the APA tells us what the term agency "means."  5 U.S.C. § 701(b)(1).  We have previously interpreted the word "means" as a more restrictive statutory term than another term that could have been selected by Congress in defining surrounding statutory language.  *Angelilli*, 660 F.2d at 31.  We read it that way here.  For example, the definitional language of the APA would have a different meaning if it told us that an agency "includes" various governmental authorities.  *See id.*

The fact that the ASMFC was created by an interstate compact and approved by Congress does not alter this analysis.  We find that the APA's definition of a federal agency does not fit the Commission.  The ASMFC Compact states that the "Commission shall be a body corporate, with

18

the powers and duties set forth" in the Compact. ASMFC Compact, art. III. Although the Commission acts in parallel with the federal government in managing the stock of summer flounder off of the Atlantic coast, it exists outside the federal administrative law framework. And, it would upset the "federal-state balance," *Armstrong*, 924 F.2d at 289, to subject its actions to accountability measures devised to restrain the actions of federal authorities. *Cf. Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, — U.S. —, 129 S. Ct. 1800, 1817 (2009).

The regulation of the territorial sea is a matter traditionally left to the states. *See In re Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200, 204 (2d Cir. 2000). Fishery management in the exclusive economic zone, however, is governed by federal authorities pursuant to the MSA.[8] With one enumerated exception, *see* 16

---

[8] The MSA establishes "eight Regional Fishery Management Councils," 16 U.S.C. § 1852(a)(1), that are responsible for preparing fishery management plans for federal waters, *id.* § 1852(h)(1). The Secretary of Commerce has final authority to approve each plan developed under the MSA. *Id.* § 1854. Parties who allege that they are aggrieved by regulations adopted by the Secretary have a right to judicial review, *id.* § 1855(f), conducted in accord with the review provisions of the APA, 5 U.S.C. § 701 *et seq. See Connecticut*, 204 F.3d at 414-16.

U.S.C. § 1856(b), the MSA states that it shall not "be construed as extending or diminishing the jurisdiction or authority of any [s]tate within its boundaries," *id.* § 1856(a)(1). Of course, summer flounder move freely between state and federal waters. *Cf. City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155, 160 (4th Cir. 2002) (recognizing that the habitat for swordfish spans both federal and state waters). Thus, coordinated regulatory activities make good sense in this context. However, the fact that federal and state entities act toward a common goal does not convert the state — or interstate — body into a federal one.

Although interstate compacts are contemplated by the Constitution, U.S. Const. art. I, § 10, cl. 3, and subject to congressional approval, we cannot escape the fact that the entity itself is an aggregation of states. While "an interstate compact or agreement becomes federal law if it is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the Constitution," *NYSA-ILA Vacation & Holiday Fund v. Waterfront Comm'n*, 732 F.2d 292, 297 (2d Cir. 1984), it does not follow that the Commission is a federal agency. To hold otherwise would have the

20

effect of treating every congressionally authorized interstate compact entity, regardless of the body's structure and function, into a federal "agency" for purposes of the APA. For reasons explained below, we do not think this result was intended by Congress.

The authority exercised by ASMFC under the Compact is not federal in nature. The signatory states have agreed to coordinate their regulatory activity in order to "promote the better utilization of the fisheries." ASMFC Compact, art. I. But, there is no indication that the contracting states understood themselves to be compacting to create a federal agency. "Interstate compacts . . . are presumed to be the subject of careful consideration before they are entered into, and are drawn by persons competent to express their meaning, and to choose apt words in which to embody the purposes of the . . . contracting parties." *New Jersey v. Delaware*, 552 U.S. 597, 615-16 (2008) (internal quotation marks omitted). We therefore decline to find that ASMFC is anything other than a state cooperative agreement, from which states are free to withdraw upon notice to the other member states. ASMFC Compact, art. XII.

While it is true that there is a "strong presumption

21

that Congress intends judicial review of administrative action," *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) (internal quotation marks omitted), that presumption is only available with regard to the administrative acts of federal agencies as defined in the APA. *See Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670-71 (1986), *superseded on other grounds by* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 2037-38 (1986). United Boatmen maintain that their claim should be accorded this presumption because the enactment of the ACFCMA rendered ASMFC a federal agency. We disagree. United Boatmen assume the conclusion they seek to reach. ASMFC is simply not an authority of the United States. The "primary purpose," *Elliott Assocs., LP v. Banco de la Nacion*, 194 F.3d 363, 371 (2d Cir. 1999), of the APA is not to reach contracts between states. And, the language of the ACFCMA makes it clear that the authority to regulate the summer flounder fishery within the territorial sea remains with the states and that the federal government plays only a supporting role in this endeavor. 16 U.S.C. § 5101(a)(4). Therefore, we hold that ASMFC does not satisfy the definition of an agency as set forth in § 701(b)(1) of the

22

APA.

**B.   The "Quasi-Federal" Agency Doctrine Does Not Bring the Commission Within the Meaning of the Term Agency under the APA**

The court below maintained that "whether Congress designates an entity as a federal agency does not end the inquiry as to whether the entity in fact operates as a federal agency."[9]  *Gutierrez*, 623 F. Supp. 2d at 307.  The district judge opined that if the ASMFC "had become so federal in character" that it should be regarded as a "quasi-federal" agency, then it would be amenable to suit by the intervenor-plaintiffs under the APA.  *Id.* at 308.  Thus, the court found that, "[i]n light of [the] substantial federal involvement in the Commission, it is not unreasonable to conclude that, despite state sovereignty concerns, ASMFC should be treated as a 'quasi-federal agency' and subjected to a private right of action under the APA."  *Id.* at 312.

The district court relied on decisions of several other courts that have acknowledged this doctrine.  *See Am.*

---

[9] While this may be true as a matter of semantics, Congress must do more than authorize the formation of an interstate body and coordinate its regulatory activities with this body to bring it within the reach of the APA.

23

*Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 304 n.10 (3d Cir. 2006); *Heard Commc'ns, Inc. v. Bi-State Dev. Agency*, 18 F. App'x 438, 439-40 (8th Cir. 2001) (per curiam) (unpublished disposition); *Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1479-80 (D.C. Cir. 1992).[10]  We find these decisions

[10] No circuit court of appeals has adopted the "quasi-agency" doctrine in a published decision.  Only the Eighth Circuit Court of Appeals has endorsed the analysis that underpins the "quasi-agency" doctrine.  *Heard Commc'ns*, 18 F. App'x at 440.  In any event, for the reasons expressed in this opinion, we are not persuaded that the doctrine — even as expressed by the courts that have accepted it — is properly invoked here.  Indeed, no circuit court has applied the doctrine to bring an entity that does not otherwise meet the definition of an agency under § 701(b)(1) within the judicial review provisions of the APA.  In *American Trucking Association*, the Third Circuit concluded that the appellants had waived the issue of whether or not review under the APA was available; therefore, it did not decide the issue.  458 F.3d at 304 n.10.  Thus, this case cannot properly be read as an endorsement of the "quasi-federal" agency doctrine.  The Eighth Circuit expressly held that the bi-state compact that was the subject of the litigation in *Heard Communications* was "not a quasi-federal agency subject to the APA."  18 F. App'x at 439.  In *Elcon*, the Court of Appeals for the District of Columbia simply assumed, without deciding, that the Washington Metropolitan Transit Authority was a federal agency.  977 F.2d at 1480.  It appears that this doctrine is the creation of several district courts. *E.g.*, *Seal & Co., Inc. v. Wash. Metro. Area Transit Auth.*, 768 F. Supp. 1150, 1154-56 (E.D. Va. 1991); *Coal. for Safe Transit, Inc. v. Bi-State Dev. Agency*, 778 F. Supp. 464, 467-68 (E.D. Mo. 1991) (citing *Union Switch & Signal, Inc. v. Bi-State Dev. Agency*, No. 91-1401C (7) (E.D. Mo. Oct. 23, 1991) (unpublished disposition)).

24

unpersuasive. Taken together, this authority provides scant support for the "quasi-federal" agency doctrine. Indeed, we are skeptical of the validity of this judge-created concept.

It is clear to us, at the very least, that the "quasi-federal" agency doctrine — whatever its merit — does not apply to the Commission. The lower court was of the view that the "quasi-federal" agency cases identify "three factors relevant to whether a compact authority warrants the quasi-federal agency classification." 623 F. Supp. 2d at 308 (internal quotation marks omitted). However, the court forthrightly acknowledged that two of the three factors do not apply to the ASMFC. With that concession, the court implicitly recognized that, given the facts of this case, designation as a "quasi-federal" agency is an ill-fitting means by which to describe the ASMFC. Nonetheless, the district court concluded that, irrespective of other considerations, federal involvement in the activities of the Commission warranted a finding that it is a "quasi-federal" agency. We disagree.

By its nature, there will always be federal involvement in a congressionally approved interstate compact. We are unpersuaded, however, that this requires us to subject what

25

is, at its core, a contract between states to the judicial review provisions of the APA. The ASMFC is a body comprised "only of its constituent" states. *Cf. Saunders v. Wash. Metro. Area Transit Auth.*, 359 F. Supp. 457, 460 (D.D.C. 1973). A finding that the ASMFC is a "quasi-federal" agency would be in tension with its governing Compact, which serves as a contractual agreement between the member states. The structure and composition of the ASMFC weigh against characterizing it as a "quasi-federal" agency. We may infer that congressional approval of the ASMFC was granted as a means of aiding the contracting states in their regulatory activities. *Cf. Doe v. Pennsylvania Bd. of Probation & Parole*, 513 F.3d 95, 104 (3d Cir. 2008). And, Congress chose to endorse the creation of this regulatory body comprised of states rather than preempt the area by creating an *actual* federal agency. *See A Fisherman's Best*, 310 F.3d at 169.

Beyond federal involvement, the fact that federal interests are implicated by the activities of the Commission does not transform ASMFC into a federal entity subject to suit under the APA. *See California v. Sierra Club*, 451 U.S. 287, 297-98 (1981). "An interstate compact represents a

26

political compromise between constituent elements of the Union." *Entergy Arkansas, Inc. v. Nebraska*, 358 F.3d 528, 542 (8th Cir. 2004) (internal quotation marks omitted). Congress may often have an interest in the terms of such a compromise, but this does not lead us to conclude that private parties are therefore entitled to assert a claim against the compact as if it were a federal agency.

The import of the district court's reasoning is that, because sound policy choices animate the APA, these policies must apply to the Commission; we again disagree. The district court in essence created a presumption of APA coverage for any entity whose functions may implicate federal interests. It noted: "Congress may not, through legislation imposing federal obligations, oversight, funding, or otherwise, transform an entity into something closely resembling a federal agency, and yet escape the accountability mechanism it intended to apply to such federal agencies — unless, of course, it specifically provides that the APA shall not apply to the entity in question." *Gutierrez*, 623 F. Supp. 2d at 307. The basis for the district court's observation that the Commission "closely resembl[es]" a federal agency eludes us. And,

27

regardless of whether or not it would be desirable, as a policy matter, to extend the reach of the APA to the ASMFC, we see no basis to expand the definition of "agency" so as to allow it to reach the ASMFC.  Congress and the states may work in partnership in the interest of a common regulatory goal without subjecting an interstate body to review provisions designed to apply to federal agencies.

Even assuming, without deciding, that there may be circumstances in which Congress has endowed an entity that is not an "authority of the [g]overnment of the United States," 5 U.S.C. § 701(b)(1), with attributes that make it so similar to a federal agency that it is subject to the judicial review provision of the APA, the district court erred in concluding that the ASMFC is a "quasi-federal" agency.  We hold that, in the absence of other factors not present in this case, the acts of Congress in approving the interstate Compact, in adopting the ACFCMA, and in providing funding to the Commission,[11] did not transmogrify the ASMFC into a "quasi-federal" agency.  *See Seattle Master Builders*

---

[11] Pursuant to the ASMFC Compact, the signatory states also "make annual appropriations to the support of the Commission."  ASMFC Compact, art. XI.

*Ass'n v. Pac. Nw. Elec. Power & Conservation Planning Council*, 786 F.2d 1359, 1364 (9th Cir. 1986); *but see Heard*, 18 F. App'x at 440.

The APA is designed, at least in part, to ensure that federal actors are held accountable to the public. *See Cohen v. Rice*, 992 F.2d 376, 380 (1st Cir. 1993). This concern is not a salient one here. There are other checks on the Commission's actions, which rest primarily within the authority of the states that comprise the Commission and the state-level officials that represent ASMFC's member states.

The fact that the ASMFC is an interstate compact entity provides an inherent restraint on its decision making process. "No action shall be taken by the Commission in regard to its general affairs except by the affirmative vote of a majority of the whole number of compacting states present at any meeting." ASMFC Compact, art. VI. And, "[n]o recommendation shall be made by the Commission in regard to any species of fish except by the affirmative vote of a majority of the compacting states which have an interest in such species." ASMFC Compact, art. VI. Each state is obligated to carry out the terms of the ASMFC Compact, and member states may seek judicial relief to

29

enforce rights under the agreement.  *See Texas v. New Mexico*, 462 U.S. 554, 569-70 (1983); *see also Nebraska v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n*, 187 F.3d 982, 985 (8th Cir. 1999).  Further, member states may avail themselves of an internal appeal mechanism; states may appeal decisions of a management board to the full membership of the Commission.[12]

Although its actions are not subject to review under § 702 of the APA, the Commission is a politically accountable body.  ASMFC is composed of state conservation agency directors, state legislators, and public citizens appointed by the governors of the member states.[13]  ASMFC Compact, art. III.  The actions of the ASMFC involve the coordinate exercise of the states' sovereign policy-making powers.  In this regard, the Commission is more akin to a legislative body than to a federal agency.  The Commission's decisions are implemented through rule-making by the individual

---

[12] See the Interstate Fisheries Management Program Charter, §§ 3(d)(9), 4(h), *available at* http://www.asmfc.org/.

[13] Federal legislators are constitutionally prohibited from serving as federal agency officials.  U.S. Const., art. I, § 6, cl. 2.

states, which affords an opportunity for public participation in the management process.  In addition, the ASMFC makes its decisions public.

Finally, the ACFCMA provides a check on the actions of the Commission; it requires that the Secretary of Commerce review a finding that a state has failed to comply with a fishery management plan.  16 U.S.C. § 5106(a).  The Compact provides that, if the Secretary determines a state has failed to comply with measures that are "necessary for the conservation" of a fishery, the Secretary shall impose a moratorium.  *Id.* §§ 5106(a), (c).  If the Secretary imposes and enforces a federal moratorium based on his or her independent findings of noncompliance, a party that is allegedly aggrieved by the Secretary's action can obtain APA review of that federal "agency action."  5 U.S.C. §§ 702, 704.

The Commission is designed to address concerns that are traditionally within the province of the states.  That the Commission seeks to address these concerns with support from the federal government, and in a manner that is harmonious with federal regulations, does not alter its essential nature.  The fact that federal interests are implicated by

31

the activities of the ASMFC does not transform it into a federal agency for purposes of seeking judicial review of its actions.

### III. CONCLUSION

The district court's order of March 9, 2009, denying the Atlantic States Marine Fisheries Commission's motion to dismiss the complaint in intervention as it pertains to that defendant, is hereby REVERSED and the case is REMANDED for further proceedings consistent with this opinion.