<u>**PUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-4498**
_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellant,

      v.

GASTON L. SAUNDERS,

              Defendant - Appellee.

------------------------

ATLANTIC STATES MARINE FISHERIES COMMISSION,

              Amicus Supporting Appellant.

_____

**No. 15-4501**
_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellant,

      v.

BRYAN H. DANIELS,

              Defendant - Appellee.

------------------------

ATLANTIC STATES MARINE FISHERIES COMMISSION,

              Amicus Supporting Appellant.

---

**No. 15-4505**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

   v.

MICHAEL POTTER,

    Defendant - Appellee.

------------------------

ATLANTIC STATES MARINE FISHERIES COMMISSION,

    Amicus Supporting Appellant.

---

**No. 15-4506**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

   v.

STEPHEN DANIELS,

    Defendant - Appellee.

------------------------

ATLANTIC STATES MARINE FISHERIES COMMISSION,

    Amicus Supporting Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Greenville and Wilmington. James C. Fox, Senior District Judge. (4:14-cr-00008-F-1; 4:14-cr-00011-F-1; 2:15-cr-00006-F-1; 2:15-cr-00004-F-1)

Argued: May 12, 2016                          Decided: July 5, 2016

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and Norman K. MOON, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Reversed and remanded by published per curiam opinion.

**ARGUED:** Brian C. Toth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Joseph Edward Zeszotarski, Jr., GAMMON, HOWARD, ZESZOTARSKI, PLLC, Raleigh, North Carolina, for Appellees. **ON BRIEF:** John C. Cruden, Assistant Attorney General, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. John P. O'Hale, NARRON, O'HALE & WHITTINGTON, PA, Smithfield, North Carolina, for Appellees. Sean H. Donahue, DONAHUE & GOLDBERG, LLP, Washington, D.C., for Amicus Curiae.

PER CURIAM:

Four commercial boat captains were charged with violating the Lacey Act after they caught Atlantic striped bass in federal waters and later sold them. The Lacey Act, through its incorporation of a federal regulation, criminalizes the taking and selling of Atlantic striped bass from federal waters. The Act, however, exempts from prosecution fishing that is "regulated by a fishery management plan in effect" under the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"). 16 U.S.C. § 3377(a). Citing that exception, the captains moved to dismiss the indictments.

The district court granted the motions based on two premises. It first found that a fishery management plan created by the Atlantic States Marine Fisheries Commission ("Commission") and referenced in the Atlantic Striped Bass Conservation Act ("Bass Act") must be treated as a plan in effect under the Magnuson-Stevens Act.[1] Next, the district court

---

[1] The Government asserts error on that point, arguing that 16 U.S.C. § 5158(c)—which catalyzed the district court's reasoning—contains a scrivener's error. That is, Section 5158(c)'s reference to "any plan issued under subsection (a)" is a textual anomaly, because subsection (a) in fact authorizes only regulations by the Secretary of Commerce, not plans. The Government attributes this dissonance to a drafting oversight in 1991 that left the "any plan" language in the statute while excising related verbiage. Compare Pub. L. No. 100-589, 102 Stat. 2984, at § 6 (Nov. 3, 1988) with Pub. L. No. 102-130, 105 Stat. 626, at § 4(1)-(2) (Oct. 17, 1991).
(Continued)

4

reasoned that the Commission's plan regulated the boat captains' activity in federal waters. Thus, the district court found that the exception applied.

We conclude, however, that the text of the plan created by the Commission and referenced by the Bass Act in fact regulates only state coastal waters, and accordingly does not regulate fishing in federal waters. The only possible hook to federal waters in the Commission's plan is the general statement that the Secretary of Commerce has authority to regulate bass fishing in federal waters. Even if this statement was enough to say that the plan regulated federal waters (which it is not), the provision would be invalid, because the Commission—a collection of state representatives—has no authority to delegate power over federal waters to the Secretary of Commerce.

Accordingly, we remand these cases to the district court with instructions to reinstate the indictments.

## I. THE INDICTMENTS

The Appellees Gaston Saunders, Bryan Daniels, Michael Potter, and Stephen Daniels (hereinafter referred to as "Captains") are the captains of commercial fishing vessels. During 2009 and 2010, the captains each harvested several tons

---

Because this appeal can be resolved without deciding whether 16 U.S.C. § 5158(c) contains a scrivener's error, we do not reach the issue.

of bass from federal waters (known as the "exclusive economic zone," or EEZ[2]), which they subsequently transported and sold to commercial seafood dealers.[3]

Based on these actions, on January 15, 2015, the Government brought separate indictments containing multiple Lacey Act counts against each captain. The Government now appeals the district court's dismissal of the indictments against Captains Potter and Stephen Daniel in full and against Captains Saunders and Bryan Daniels in part.[4] We consolidated the four cases.

## II. THE REGULATORY FRAMEWORK

### A. The Lacey Act

The Lacey Act makes it a crime to take wildlife in violation of some other federal law. Specifically, it is illegal to, inter alia, transport, acquire, or sell any fish "taken possessed, transported, or sold in violation of any law, treaty, or regulation of the United States . . . ." 16 U.S.C. § 3372(a)(1). If one does so "by knowingly engaging in conduct

---

[2] On the eastern seaboard, the EEZ extends from three to 200 miles offshore. See 16 U.S.C. § 1802(11); 50 C.F.R. § 600.10; 48 Fed. Reg. 10,605, 1983 WL 506851 (Mar. 10, 1983).

[3] The indictment charged that these bounties involved bass with a market value greater than $350, as required by the Lacey Act. See 16 U.S.C. 3373(d)(1)(B).

[4] The indictments against Captains Saunders and Bryan Daniels also included counts for making false statements and aiding and abetting. Those counts are not before us.

that involves" the sale of such ill-gotten fish having a market value over $350, then he may be imprisoned, fined, or both.  Id. § 3373(d)(1)(B).

Because the Bass Act, described below, forbids anyone from harvesting, retaining, possessing, or fishing for bass in the EEZ, the captains allegedly violated the Lacey Act when they caught several tons of bass in the EEZ during 2009 and 2010.

### B.  The Bass Act and the Commission

Congress has found that Atlantic striped bass are commercially, economically, and recreationally important.  16 U.S.C. § 5151(a)(1).  Due to their migratory nature, "[n]o single government entity has full management authority" over bass.  Id. § 5151(a)(2).  Congress enacted the Bass Act "to support and encourage the development, implementation, and enforcement of effective interstate action regarding the conservation and management of the Atlantic striped bass."  Id. § 5151(b).  To accomplish this goal, the Bass Act divides regulatory authority over Atlantic striped bass into two distinct, but interrelated, schemes: (1) federal waters and (2) state coastal waters.

First, Congress outlined the regulation of bass in federal waters. 16 U.S.C. § 5158; see id. §§ 5152(6), 1802(11); supra footnote 2.  Section 5158(a) commands the Secretary of Commerce to "promulgate regulations governing fishing for Atlantic

7

striped bass in the exclusive economic zone . . . ." The Secretary of Commerce must "consult" with, among others, the Commission when preparing her rules. Id. § 5158(b). In addition to other standards, her regulations must be "compatible with the Plan and each Federal moratorium in effect on fishing for Atlantic striped bass within the coastal waters of a coastal State." Id. § 5158(a)(2) (emphasis added).

A state coastal waters "plan" under the Bass Act is a plan (or amendment to such plan) for managing bass "that is prepared and adopted by the Commission." 16 U.S.C. §§ 5152(5), 5152(10). The Bass Act instructs the Commission to annually determine whether its member-States have adopted measures for their "coastal waters" (i.e., zero to three miles offshore) that fully implement and satisfactorily enforce the Commission's plan. Id. § 5153(a); see id. § 5152(3). The Commission then notifies both the Secretary of Commerce and Secretary of Interior ("Secretaries") of each such "negative determination." Id. § 5153(c); see id. § 5152(3). At that point, the Secretaries jointly determine whether the particular State is, in fact, in compliance with the Commission's plan. If not, the Secretaries "declare jointly a moratorium on fishing for Atlantic striped bass within the coastal waters of that coastal State," violation of which is punishable civilly. Id. §§ 5154(a), (c). The prospect of this federally-imposed moratorium therefore acts as

8

an enforcement mechanism against recalcitrant States that refuse to abide by the Commission's plan governing state coastal waters.[5]

A brief comment on the Commission's history further illuminates the genesis and structure of the Bass Act. States cannot enter into any agreement or compact without the consent of Congress. U.S. Const. art. I, § 10, cl. 3. In 1941, Congress approved the interstate compact that created the Commission and endeavored to better manage fish populations on the Atlantic seaboard. Pub. L. No. 77-539, 56 Stat. 267 (May 4, 1942); see also Pub. L. No. 81-721, 64 Stat. 467 (Aug. 19, 1950) (approving addition of new States and repealing limitation on the life of the compact); New York v. Atl. States Marine Fisheries Comm'n, 609 F.3d 524, 528 (2d Cir. 2010); Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt., 585 F.3d 42, 46 (1st Cir. 2009). Under the compact, each State appoints members to the Commission, which is charged with investigating conservation measures, offering suggestions for coordination of the States' police powers, and presenting

---

[5] See Note, Joseph A. Farside, Jr., Atlantic States Marine Fisheries Commission: Getting A Grip on Slippery Fisheries Management, 11 Roger Williams U. L. Rev. 231, 242 (2005) (explaining that "threat of a moratorium" and corresponding "millions of dollars of lost business" encourages States to comply with Commission's plan).

recommended legislation to the member-States. 56 Stat. 267-68; New York, 609 F.3d at 528.

Exercising these powers, the Commission in 1981 issued its first plan for Atlantic striped bass fishing in state coastal waters. Atlantic States Marine Fisheries Commission, Fisheries Mgmt. Rep. No. 1: Interstate Fisheries Mgmt. Plan of the Striped Bass (Oct. 1981) ("1981 Plan"). Faced with declining bass populations, the 1981 Plan put forth several "recommended management measures." Id. at 1-1 & 1-4. But "attempts at implementing the plan failed due to [the Commission's] lack of direct regulatory authority over the individual Atlantic states." Note, Thomas Rapone, The EEZ Solution to Striper Management: Why the Federal Government Should Ban the Commercial Harvest of Striped Bass Once and for All, 44 Suffolk U. L. Rev. 567, 569 (2011); see id. at 577 (observing that as the product of "a mere interstate compact, the [Commission] still lacked the regulatory authority to force individual states to comply"); New York, 609 F.3d at 528; see also Atlantic States Marine Fisheries Commission, Fishery Mgmt. Rep. No. 41, Amend. 6 to the Interstate Fishery Mgmt. Plan for Atl. Striped Bass, at p.39 § 5.0 (Feb. 2003) ("Amendment 6") (observing that "Commission does not have the authority to directly compel state/jurisdictional implementation of the measures" proposed).

10

Against the backdrop of this collective action problem, Congress passed the Bass Act in 1984, Pub. L. No. 98-613, 98 Stat. 3187 (Oct. 31, 1984), which functions as the cooperative federalism scheme explained above and summarized in the chart below.

| | State coastal waters (0-3 miles offshore) | Federal waters (EEZ) (3-200 miles offshore) |
|---|---|---|
| **States' regulatory role (via Commission)** | <u>Primary</u>. Commission designs plan for state coastal waters and annually notifies the Commerce and Interior Secretaries of non-compliance. § 5153. | <u>Secondary</u>. Commission provides input to Secretary of Commerce as she formulates regulations for the EEZ. § 5158(b). |
| **Federal regulatory role** | <u>Secondary</u>. Secretaries of Commerce and Interior make final determinations of non-compliance with plan and declare moratorium in offending State's coastal waters. § 5154(a). | <u>Primary</u>. Secretary of Commerce issues regulations for the EEZ, which must be "compatible with" Commission's plan for coastal waters. §5158(a)(2). |

### C.  The Lacey Act Exemption

The Lacey Act exempts conduct from prosecution if it was "<u>activity regulated</u> by a fishery management <u>plan in effect under</u>" the Magnuson-Stevens Act.  16 U.S.C. § 3377(a) (emphasis added).  A Magnuson-Stevens Act plan is quite different from a

11

plan created by the Commission. Magnuson-Stevens Act plans are created by one of eight regional councils (or occasionally the Secretary of Commerce) composed of various state and federal officials. Id. §§ 1852(a)(1), (b)-(c), 1854(c). The regional councils themselves are creatures of the Magnuson-Stevens Act, id. § 1852(a)(1), not an interstate compact like the Commission. And unlike Commission plans, regional councils' plans must include federally-mandated provisions and are subject to final approval by the Secretary of Commerce. Id. §§ 1853(a), 1854(a).

In any event, to resolve these appeals we need only decide whether the Commission's plan (which the district court treated as a Magnuson-Stevens Act plan) regulates the captains' activity of bass fishing in federal waters. See supra footnote 1. To that question we now turn.

### III. DISCUSSION

"We review a district court's decision to grant a motion to dismiss an indictment de novo." United States v. Good, 326 F.3d 589, 591 (4th Cir. 2003).

### A. The Commission's plan

The district court concluded that the Commission's plan authorizes the Secretary of Commerce to regulate striped bass in federal waters, the EEZ. It further noted that the Secretary of Commerce promulgated a regulation—50 C.F.R. § 697.7(b)— "prohibiting fishing for Atlantic striped bass in the EEZ,"

12

which is "the same regulation under which [defendants are] being prosecuted." Thus, the district court held the Commission's plan regulates the captains' conduct (by way of the Secretary of Commerce's rule that the plan "authorized"), and the Lacey Act exemption applies. We disagree.

**1. The plan does not authorize the Secretary of Commerce's regulation**

As an interpretive manner, the Commission's plan does not authorize the Secretary of Commerce to issue the regulation banning fishing for bass in federal waters.

The text of the Commission's plan does not purport to grant any power to regulate federal waters to the Secretary of Commerce. In fact, a portion of a 2003 amendment to the Commission's plan reads:

> Management of striped bass in the EEZ is within the Jurisdiction of the Secretary of Commerce. The responsibilities of the Secretary of Commerce are detailed in the Atlantic Striped Bass Conservation Act.

Amendment 6, at p.38 § 4.8.8.1. This provision is a simple acknowledgement by the Commission of the Secretary of Commerce's independent authority under the Bass Act. See 16 U.S.C. § 5158(a); 55 Fed. Reg. 40,181, 1990 WL 351745 (Oct. 2, 1990); 50 C.F.R. § 697.1. Moreover, Section 2.4 of Amendment 6 defines the plan's "management unit" to expressly "exclud[e] the Exclusive Economic Zone (3-200 nautical miles offshore)." Id.

13

at v & 20; see id. at vii & 39 § 4.9 (recognizing that "management of striped bass in the exclusive economic zone (EEZ) is the responsibility of the Secretary [of Commerce]," while also making non-binding recommendations to the Secretary of Commerce regarding federal waters as contemplated by 16 U.S.C. §§ 5158(a)(3), (b)).  In other words, the Commission's plan disclaimed any regulatory role over federal waters and instead recognized the regulation of federal waters as part of the powers granted to the Secretary of Commerce by the Bass Act.

In sum, nothing in the Commission's plan purports to grant authority over federal waters to the Secretary of Commerce.

### 2. The plan cannot authorize the Secretary of Commerce's regulation

Even had the Commission tried to endow the Secretary of Commerce with some form of power over federal waters, the attempt would have been legally meaningless.

The Secretary of Commerce is the head of an executive department of the United States and a member of the President's cabinet. See 5 U.S.C. § 101; U.S. Const. Art. II, § 2, cl.2.  In other words, she derives her authority from federal sources—acts of Congress and the inherent Article II powers of the Executive Branch.  As it pertains to this case, her power to regulate federal waters comes directly from the Bass Act. 16 U.S.C. § 5158(a).

14

The Commission, by contrast, is the creature of an interstate compact that binds only the sovereign States that are parties to it. See Pub. L. No. 77-539, 56 Stat. 267 (May 4, 1942); New York, 609 F.3d at 526. It is, for instance, "not a federal agency within the meaning of the" Administrative Procedure Act, i.e., not an "authority of the Government of the United States." New York, 609 F.3d at 527. "The fact that the [Commission] was created by an interstate compact and approved by Congress does not alter th[e] analysis." Id. at 532; see id. at 533 ("we cannot escape the fact that the entity itself is an aggregation of states").

Simply put, the Commission, as a compilation of State representatives, is charged with regulating the States' own waters. See id. at 527; Medeiros v. Vincent, 431 F.3d 25, 27 (1st Cir. 2005). The Secretary of Commerce regulates federal waters because that is what Congress told her to do in the Bass Act. The Secretary of Commerce needs nothing further, and the Commission has nothing to bestow on her.

## B. Void for Complexity

As an alternative ground for affirming the district court, the captains ask us to find that the statutory scheme here is void for vagueness. We disagree with the captains' argument.

A statute is unconstitutionally vague if it "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity

15

to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" United States v. Shrader, 675 F.3d 300, 310 (4th Cir. 2012) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)). The captains present only the first theory. In assessing the existence of fair notice, we consider "whether a statute's prohibitions are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Id. (internal quotation omitted).

The captains' vagueness argument contains an oddity and an irony. The oddity is that vagueness challenges usually target a particular word or phrase as critically deficient.[6] Here, however, the captains launch a broadside attack on the entire "statutory framework" as unconstitutionally "convoluted and confusing."

The irony is that this claimed convolution is mainly the product of the exceptionally novel (and ultimately unsupported) reading of the Lacey Act, Bass Act, and the Commission's plan

---

[6] See, e.g., Johnson v. United States, -- U.S. --, 135 S. Ct. 2551 (2015) (voiding "residual clause" in Armed Career Criminal Act); United States v. Shrader, 675 F.3d 300, 310-12 (4th Cir. 2012) (evaluating statutory terms "harass," "intimidate," and "course of conduct"); Martin v. Lloyd, 700 F.3d 132, 136 (4th Cir. 2012) (courts must place particular "phrases or words" in context when considering a vagueness challenge).

that the captains urged below.  The Government's theory in the indictments was straightforward:  the Lacey Act criminalizes taking wildlife in violation of a federal regulation; a federal regulation under the Bass Act makes it illegal to fish for bass in federal waters; the captains fished for bass in federal waters; therefore, the captains committed Lacey Act crimes.

To support their position, the captains tally the number of statutes, plans, and regulations they say must be consulted to divine whether their conduct was illegal.  But counting the number of laws in a case is a poor way to decide a due process challenge:  Our sister circuits have squarely held that regulatory complexity does not render a statute (or set of statutes) unconstitutionally vague.

> We recognize that putting together the pieces of this regulatory puzzle is not easy. To understand the crime with which Defendant was charged, one must look at four sources and read them together . . . . But a statute does not fail the vagueness test simply because it involves a complex regulatory scheme, or requires that several sources be read together, and Defendant has not directed us to a single case in which we have held otherwise.

United States v. Zhi Yong Guo, 634 F.3d 1119, 1122 (9th Cir. 2011); see United States v. Griffith, 85 F.3d 284, 288 (7th Cir. 1996) ("The statutory structure involved is admittedly somewhat complicated—it takes three steps to get from state prostitution to federal money laundering. But complication is not tantamount to unconstitutional vagueness.  Here, each step in the statutory

17

analysis is well-defined.") (emphasis in original).  We think the principle of law in these cases is sound.  Moreover, a "statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." United States v. Whorley, 550 F.3d 326, 334 (4th Cir. 2008).

We hasten to add that the straightforward prohibition here—colloquially, "don't fish for bass in federal waters"—has been on the books and readily comprehensible to those in the fishing industry (much less the general population) for over a quarter-century.  55 Fed. Reg. 40,181, 1990 WL 351745 (Oct. 2, 1990); see Atlantic States Marine Fisheries Commission, Addendum IV to Amend. 6 to the Interstate Fishery Mgmt. Plan, at p.5 § 2.3.3 (Oct. 2014) ("Federal waters . . . ha[ve] been closed to the harvest, possession and targeting of striped bass since 1990").  Further, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow," and because market participants "can be expected to consult relevant legislation in advance of action."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982); see United States v. Sun, 278 F.3d 302, 309 (4th Cir. 2002).

The Lacey Act also contains a <u>scienter</u> requirement (two of them, in fact), thus forcing the Government to prove the captains' knowledge.

> Any person who violates [<u>inter alia</u>, 16 U.S.C. § 3372(a)] by <u>knowingly</u> engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350, <u>knowing</u> that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation, shall be fined not more than $20,000, or imprisoned for not more than five years, or both.

16 U.S.C. § 3373(d)(1)(B). A "<u>scienter</u> requirement alone tends to defeat" vagueness challenges to criminal statutes. <u>United States v. Jaensch</u>, 665 F.3d 83, 90 (4th Cir. 2011); <u>see Gonzales v. Carhart</u>, 550 U.S. 124, 149 (2007) ("<u>scienter</u> requirements alleviate vagueness concerns"); <u>Colautti v. Franklin</u>, 439 U.S. 379, 395 & n.13 (1979) (recognizing "that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of <u>mens rea</u>"); <u>United States v. McLean</u>, 715 F.3d 129, 137 (4th Cir. 2013); <u>United States v. Shrader</u>, 675 F.3d 300, 311 (4th Cir. 2012); <u>see also United States v. Lee</u>, 937 F.2d 1388, 1394-95 (9th Cir. 1991) (sustaining Lacey Act conviction against vagueness challenge due

19

to <u>scienter</u> requirement).  Consequently, we find no merit to the captains' vagueness argument.[7]

*    *    *

We conclude that the Lacey Act, 16 U.S.C. § 3377(a), does not except from prosecution the captains' conduct alleged in the indictments.  We also reject the contention that the regulatory regime governing the captains' actions is unconstitutionally vague.  Accordingly, we reverse the orders of the district court dismissing the indictments and remand the cases with instructions that the indictments be reinstated.

<u>REVERSED AND REMANDED</u>

---

[7]    The captains' overbreadth argument (in truth, a single mention of the term) is insufficiently presented and thus waived.  The same conclusion applies to their passing reference to the rule of lenity, which—like their vagueness challenge—does not direct us to any particular statutory words or phrases that we should interpret leniently.

20