**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4547

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

EDWARD JAY WASS,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, Chief District Judge. (7:18-cr-00045-BO-1)

Argued: January 29, 2020                           Decided: March 25, 2020

Before KEENAN, WYNN, and RUSHING, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Keenan and Judge Rushing joined.

**ARGUED:** Jacob D. Pugh, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

Defendant Edward Wass was indicted in March 2018 for a violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). The indictment alleged that between September 2016 and February 2018, Wass traveled interstate and knowingly failed to register as a sex offender as he was required to do pursuant to SORNA. The district court dismissed the indictment on the ground that SORNA is unconstitutional under the nondelegation doctrine and the ex post facto clause. The Government timely appealed.

Because binding precedent establishes that application of SORNA to Wass does not violate the nondelegation doctrine or the ex post facto clause, we reverse the dismissal of the indictment and remand for further proceedings.

I.

In 1995, Wass was convicted of two sexual offenses in Florida and sentenced to one year each of custody and community control as well as seven years of probation. His probation was revoked in 1998, after which he served another year in custody and an additional fifteen years of probation.[1] He completed his probation in 2014.

In July 2006—well after Wass's sex-offense convictions had become final—Congress enacted SORNA. Sex Offender Registration and Notification Act, Pub. L. No.

---

[1] The record does not specify why Wass's probation was revoked.

109-248, 120 Stat. 587 (2006).[2] SORNA requires a sex offender—that is, "an individual who was convicted of a sex offense," 34 U.S.C. § 20911(1)—to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," *id.* § 20913(a). The duration of the registration requirement depends on the severity of the underlying sex offense, *id.* § 20915(a), and whether the offender "maintains a clean record," *id.* § 20915(b)(1).

Under SORNA, Congress made failure to register a crime. 18 U.S.C. § 2250(a). Relevant here, that statute provides that "[w]hoever . . . (1) is required to register under [SORNA]; . . . [(2)] travels in interstate or foreign commerce . . . ; and (3) knowingly fails to register or update a registration as required by [SORNA]; shall be fined . . . or imprisoned not more than 10 years, or both." *Id.*

In March 2018, a grand jury returned an indictment charging Wass under § 2250(a). Specifically, the indictment alleged that "[d]uring a period of time beginning at a date unknown, but no later than September 2016, and continuing through on or about February 27, 2018," Wass, "being required to register under [SORNA], and having traveled in interstate commerce, did knowingly fail to register as required by" SORNA. J.A. 6.[3] The indictment did not specify where Wass allegedly traveled. On Wass's motion, the district court dismissed the indictment, citing the nondelegation doctrine and the ex post facto

---

[2] SORNA was originally codified at 42 U.S.C. § 16901 *et seq.* It was later transferred to 34 U.S.C. § 20901 *et seq.*

[3] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

clause. *United States v. Wass*, No. 7:18-CR-45-BO, 2018 WL 3341180, at *2–5 (E.D.N.C. July 6, 2018).

"We review a district court's decision to grant a motion to dismiss an indictment *de novo*." *United States v. Saunders*, 828 F.3d 198, 204 (4th Cir. 2016) (quoting *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003)). Upon de novo review, we reverse.

II.

The first issue before us is whether the district court correctly found that the application of SORNA to sex offenders, like Wass, whose offenses predate Congress's enactment of SORNA ("pre-SORNA offenders"), violates the nondelegation doctrine because SORNA improperly delegated to the Attorney General the question of whether the statute would apply to pre-SORNA offenders.

"The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121 (Kagan, J.) (plurality opinion), *reh'g denied*, 140 S. Ct. 579 (2019); *see also id.* at 2123 (citing U.S. Const. art. I, § 1). But Congress "may confer substantial discretion on executive agencies to implement and enforce the laws" as long as it "has supplied an intelligible principle to guide the delegee's use of discretion." *Id.* at 2123 (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).

When Congress enacted SORNA, it authorized the Attorney General "to specify the applicability of the [registration] requirements . . . to sex offenders convicted before . . . [SORNA's] enactment." 34 U.S.C. § 20913(d); *see also Reynolds v. United States*, 565 U.S. 432, 435 (2012) (holding that SORNA's "registration requirements do not apply to

4

pre-[SORNA] offenders until the Attorney General specifies that they do apply"). Pursuant to this authority, the Attorney General issued regulations, finalized in 2011, applying SORNA's requirements to "all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment" of SORNA. 28 C.F.R. § 72.3 (2011).

Wass argues that the nondelegation doctrine renders SORNA unconstitutional as applied to pre-SORNA offenders like himself. Specifically, he contends that § 20913(d) violates the nondelegation doctrine because he interprets the statute's language granting the Attorney General "the authority to specify the applicability" of SORNA's requirements to pre-SORNA offenders as meaning that Congress refused to decide the question of whether SORNA would apply *at all* to pre-SORNA offenders, instead punting that decision to the Attorney General. 34 U.S.C. § 20913(d). The district court understood § 20913(d) in the same way. *See Wass*, 2018 WL 3341180, at \*1, \*3 ("[SORNA] did not take a position on what to do with individuals who had been convicted of a registrable sex offense prior to the law's passage. Instead, Congress made that responsibility the Attorney General's. . . . The Attorney General . . . was granted the freedom to apply SORNA to all pre-[SORNA] offenders, to draw distinctions between various groups based on no particular congressional mandate, or to not apply SORNA at all.").

But the Supreme Court disagrees: "This Court has already interpreted § 20913(d) to say something different—to *require* the Attorney General to apply SORNA to all pre-[SORNA] offenders as soon as feasible." *Gundy*, 139 S. Ct. at 2123 (Kagan, J.) (plurality opinion) (emphasis added) (citing *Reynolds*, 565 U.S. at 442–43). Thus, the "Attorney

5

General's discretion extends only to considering and addressing feasibility issues." *Id.* at 2124. That is, Congress intended to give the Attorney General "the time needed (if any) to address the various implementation issues involved in getting pre-[SORNA] offenders into the registration system." *Id.* at 2128. The plurality in *Gundy* concluded that such "delegation easily passes constitutional muster." *Id.* at 2121.

Wass argues that *Gundy* is not determinative because it was a split (4-1-3) opinion. *See* Response Br. at 8.[4] We cannot agree.

"It is well established . . . that when a decision of the Court lacks a majority opinion, the opinion of the Justices concurring in the judgment on the 'narrowest grounds' is to be regarded as the Court's holding." *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). Three Justices joined Justice Kagan in her plurality opinion in *Gundy*, and Justice Alito concurred in the judgment, writing:

> If a majority of this Court were willing to reconsider the approach we have taken [to the nondelegation doctrine] for the past 84 years, I would support that effort. But because a majority is not willing to do that, it would be freakish to single out the provision at issue here for special treatment.
> Because I cannot say that [SORNA] lacks a discernable standard that is adequate under the approach this Court has taken for many years, I vote to affirm.

*Gundy*, 139 S. Ct. at 2131 (Alito, J., concurring). Thus, "the narrowest common ground that five Justices stood upon in *Gundy* is that the SORNA delegation did not violate long-

---

[4] Counsel conceded at oral argument that *Gundy* resolves this question. Oral Arg. at 4:30–5:06, https://www.ca4.uscourts.gov/OAarchive/mp3/18-4547-20200129.mp3. We nevertheless address it to make this Court's position clear.

standing delegation doctrine analysis." *United States v. Glenn*, 786 F. App'x 410, 411–12 (4th Cir. 2019) (per curiam). Accordingly, we hold that Wass's argument is precluded by *Gundy*.

III.

As to the second issue, Wass's ex post facto arguments fare no better. The Constitution forbids Congress or the states from passing any ex post facto law. *See* U.S. Const. art. I, § 9, cl. 3; *id.* § 10, cl. 1. An ex post facto law is one that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–326 (1866)), *limited on other grounds by Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995). The Constitution's prohibition on ex post facto laws "ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action." *Peugh v. United States*, 569 U.S. 530, 544 (2013) (citing *Weaver*, 450 U.S. at 28–29).

Because the ex post facto clause forbids "retroactive *punishment*," *Smith v. Doe*, 538 U.S. 84, 92 (2003) (emphasis added), a threshold question is whether a statute challenged on ex post facto grounds in fact authorizes punishment. "If the intention of the legislature was to impose punishment, that ends the inquiry"; retroactive application of such a punishment would violate the Constitution. *Id.* But if the legislature's intention "was to enact a regulatory scheme that is civil and nonpunitive," courts must examine "whether the statutory scheme is so punitive either in purpose or effect as to negate" that intention.

7

*Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)) (internal quotation marks omitted).

Wass's ex post facto challenge to SORNA is twofold. First, he challenges the application of the criminal sanctions of 18 U.S.C. § 2250(a) to pre-SORNA offenders. Second, he alleges that SORNA's registration requirement is itself so punitive that it constitutes punishment that cannot constitutionally be applied to pre-SORNA offenders. We hold that SORNA does not violate the ex post facto clause under either theory.

A.

As to Wass's first challenge—the application of the criminal sanctions of 18 U.S.C. § 2250(a) to pre-SORNA offenders—there is no doubt that § 2250(a), which authorizes imprisonment, is punitive. The question is thus what behavior it punishes. If the statute punishes pre-SORNA offenders for their underlying (pre-SORNA) sex offenses, it violates the ex post facto clause. If it punishes post-SORNA conduct, it does not.

This Court has already answered this question. In *United States v. Gould*, we rejected an ex post facto challenge to SORNA. 568 F.3d 459, 466 (4th Cir. 2009). The defendant in *Gould* was convicted of a sex offense in 1985. *Id.* at 461. In August 2006, after Congress enacted SORNA, the defendant moved from Pennsylvania to Maryland. *Id.* at 462. He failed to register in Maryland and was indicted. *Id.* We held that § 2250(a) punishes the failure to register *after* SORNA's enactment and therefore that the defendant's "punishment does not violate the Ex Post Facto Clause." *Id.* at 466.

Wass argues that *Gould*'s reasoning has been undermined by the Supreme Court's decision in *Carr v. United States*. *Carr* involved a defendant who had been convicted of a

8

sex offense, moved between states, and failed to register in the new state—*all* before the enactment of SORNA. 560 U.S. 438, 442 (2010) (noting the defendant's 2004 sex-offense conviction and 2004 or 2005 interstate move, after which he did not register, either before or after SORNA's enactment). The Supreme Court held that § 2250 "does not extend to preenactment travel" like that of the *Carr* defendant. *Id.* at 458.

Importantly, in reaching this conclusion, the Supreme Court held that "the elements of § 2250 should be read sequentially." *Id.* at 446. The Court also held that the first element "is not a predicate sex-offense conviction. It is a requirement 'to register under [SORNA].'" *Id.* at 447 n.4 (quoting 18 U.S.C. § 2250(a)(1)).[5] Thus, "the statutory sequence begins when a person becomes subject to SORNA's registration requirements. The person must then travel in interstate commerce and thereafter fail to register." *Id.* at 446. And each of these elements must "necessarily postdate SORNA's enactment because a sex offender could not have been required to register under SORNA until SORNA became the law." *Id.* The Supreme Court therefore concluded that "[l]iability under § 2250 . . . cannot be predicated on pre-SORNA travel." *Id.* at 442.[6]

---

[5] These two categories are not coextensive. Having a predicate sex-offense conviction alone is not enough to be required to register. As noted, for some sex offenders, the registration requirement is time-limited. *See* 34 U.S.C. § 20915.

[6] Because the Court found that "§ 2250 does not *extend* to preenactment travel," it did not reach the question of whether *applying* SORNA to pre-SORNA travel or to pre-SORNA offenders would violate the ex post facto clause. *Carr*, 560 U.S. at 458 (emphasis added); *see id.* at 455 n.9.

9

None of this reasoning undermines the key holding of *Gould*: that SORNA punishes conduct that occurs after its enactment. Nevertheless, Wass argues that, after *Carr*, "*Gould* is simply incorrect (or at least incomplete) when it holds that Section 2250(a) punishes only the failure to register." Response Br. at 11. We do not read *Gould* to say that § 2250(a) punishes *only* the failure to register, ignoring the other two elements.

However, it is true that *Gould* rejected the defendant's appeal even though the defendant's August 2006 interstate travel preceded his February 2007 requirement to register. *Gould*, 568 F.3d at 462, 465; *see United States v. Hatcher*, 560 F.3d 222, 229 (4th Cir. 2009) ("SORNA's registration requirements did not apply to pre-SORNA offenders until the Attorney General issued the interim rule on February 28, 2007."). Under *Carr*'s sequential understanding of the § 2250(a) elements, *Gould* has been limited by *Carr*, because an offender's interstate travel must take place *after* the offender is required to register. *Carr*, 560 U.S. at 447. But for purposes of this case, *Gould*'s key point—that SORNA punishes new conduct—still stands after (and is reinforced by) *Carr*. *Gould*, 568 F.3d at 466.[7] *Carr* merely clarified the elements required for a § 2250(a) violation.

_____

[7] Unsurprisingly, several of our sister circuits have issued decisions after *Carr* rejecting ex post facto challenges from pre-SORNA offenders whose interstate travel and failure to register occurred after they had become subject to SORNA's registration requirement. *E.g.*, *United States v. Billiot*, 785 F.3d 1266, 1269 (8th Cir. 2015) (citing the pre-*Carr* circuit precedent of *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008), *abrogated on other grounds by Reynolds*, 565 U.S. 432); *United States v. White*, 782 F.3d 1118, 1126–27 (10th Cir. 2015) (holding that the panel remained bound by the pre-*Carr* decision of *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008)); *United States v. Torres*, 767 F.3d 426, 430 (5th Cir. 2014); *United States v. Lott*, 750 F.3d 214, 220 (2d Cir. 2014) (citing pre-*Carr* Second Circuit precedent, *United States v. Guzman*, 591 F.3d 83 (2d Cir.), *as amended* (Jan. 8, 2010), and stating that "[t]here is no superseding authority

To the extent there is any doubt about this Court's position after *Carr*, we hold that application of § 2250(a) does not violate the ex post facto clause as long as, after SORNA's enactment, the defendant: (1) was required to register, (2) traveled in interstate commerce, and (3) knowingly failed to register (in that order). *See* 18 U.S.C. § 2250(a);[8] *Carr*, 560 U.S. at 447 & n.4; *see also Gould*, 568 F.3d at 466.

Here, "[n]o one disputes that Mr. Wass's 1995 Florida convictions are of the type that would require him to register," Response Br. at 1, and the indictment alleges that his travel and knowing failure to register occurred well after SORNA's enactment, *see* J.A. 6.[9]

Wass's other argument regarding § 2250(a) is equally unavailing. He attempts to rely on cases in which this Court found an ex post facto violation when a district court revoked a defendant's supervised release and imposed a sentence on the basis of a statute that changed or was enacted after the defendant committed the underlying offense. *See* Response Br. at 12 (citing *United States v. Lominac*, 144 F.3d 308, 312 (4th Cir. 1998), *abrogated by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Parriett*, 974

---

that causes us to revisit that holding"); *United States v. Parks*, 698 F.3d 1, 4–5 (1st Cir. 2012); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012). Moreover, in unpublished decisions, this Court has continued to rely on *Gould* after *Carr*. *E.g.*, *United States v. Sampsell*, 541 F. App'x 258, 260 (4th Cir. 2013) (per curiam); *United States v. Burns*, 418 F. App'x 209, 212 (4th Cir. 2011) ("[The defendant] overlooks the fact that his failure-to-register conviction stems from post-enactment conduct.").

[8] Of course, the statute provides other means to satisfy the second and third elements—for example, traveling in foreign rather than interstate commerce. 18 U.S.C. § 2250(a)(2)(B).

[9] Wass concedes that the alleged travel and failure to register postdate SORNA's enactment. *See* Response Br. at 11–12.

F.2d 523, 525–26 (4th Cir. 1992)). But supervised release, and any revocation sentence based on a supervised release violation, is "a component of [the defendant's] underlying original sentence." *United States v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019) (citing *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018)); *see also Parriett*, 974 F.2d at 526 ("[T]he revision of the supervised release statute altered the legal consequences of [the defendant]'s original crime, and therefore . . . the amendment cannot be applied to [the defendant] without violating the *ex post facto* clause.").

By contrast, as discussed, a SORNA violation constitutes a new criminal offense. *Gould*, 568 F.3d at 466; *see Carr*, 560 U.S. at 447; *cf. United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (rejecting an ex post facto challenge to a conviction under 18 U.S.C. § 922(g)(9), even though the defendant's predicate domestic-violence conviction occurred before the relevant statutory amendment, "because the conduct prohibited by § 922(g)(9) is the *possession* of a firearm," which in the defendant's case came after the amendment); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995) (rejecting a similar ex post facto challenge to an Armed Career Criminal Act sentencing enhancement), *abrogated on other grounds by Johnson v. United States*, 559 U.S. 133 (2010).

Here, because, after SORNA's enactment, Wass "bec[ame] subject to SORNA's registration requirements," allegedly "travel[ed] in interstate commerce," and "thereafter [allegedly] fail[ed] to register," he was properly indicted for a violation of § 2250. *Carr*, 560 U.S. at 446. Accordingly, Wass's ex post facto challenge to § 2250 is without merit.

B.

12

Wass alternatively contends that the registration requirement itself is so punitive that it constitutes punishment for the underlying sex offense, and thus that requiring him to register violates the ex post facto clause.

Congress intended SORNA's registration requirements "to create a non-punitive regulatory framework to keep track of sex offenders." *United States v. Under Seal*, 709 F.3d 257, 264 (4th Cir. 2013). But regardless of a legislature's intention, it may nevertheless enact a scheme that is "so punitive either in purpose or effect as to negate" that intention. *Smith*, 538 U.S. at 92 (quoting *Kansas*, 521 U.S. at 361). The Supreme Court has clarified that, because courts usually defer to the legislature's stated intent, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)) (internal quotation marks omitted). Wass contends that SORNA's registration requirements constitute such a clearly punitive scheme.

Wass's argument cannot succeed because this Court has already held that SORNA is non-punitive, "*both in purpose and effect*." *Under Seal*, 709 F.3d at 263 (emphasis added).[10] Although *Under Seal* involved an Eighth Amendment cruel-and-unusual-punishment challenge to SORNA, this Court used the framework that the Supreme Court established in *Smith* for ex post facto challenges, since a threshold question for either type

---

[10] Several of our sister circuits agree. *E.g.*, *Parks*, 698 F.3d at 6; *United States v. Elkins*, 683 F.3d 1039, 1043–45 (9th Cir. 2012); *Felts*, 674 F.3d at 605–06; *United States v. Young*, 585 F.3d 199, 204–06 (5th Cir. 2009); *Lawrance*, 548 F.3d at 1333; *May*, 535 F.3d at 919–20.

of constitutional challenge is whether the statute imposes a punishment. *Cf. United States v. Juvenile Male*, 670 F.3d 999, 1010 (9th Cir. 2012) ("[O]ther circuits have held that SORNA's registration requirement is not even a punitive measure, let alone cruel and unusual punishment.").

In *Smith*, the Supreme Court evaluated the Alaska Sex Offender Registration Act and found it to be nonpunitive. 538 U.S. at 89, 105. The Court first concluded that the Alaska legislature's intent "was to create a civil, nonpunitive regime." *Id.* at 96. The Court then determined that the statute's registration and notification requirements were not sufficiently punitive to overcome this legislative intent. *Id.* at 105. In conducting this analysis, the Court cited five of the seven factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), as providing a "useful"—though "'neither exhaustive nor dispositive'"—framework. *Smith*, 538 U.S. at 97 (quoting *United States v. Ward*, 448 U.S. 242, 249 (1980)).

Under the *Smith* framework, a court asks "whether, in its necessary operation, the regulatory scheme:" (1) "has been regarded in our history and traditions as a punishment;" (2) "imposes an affirmative disability or restraint;" (3) "promotes the traditional aims of punishment;" (4) "has a rational connection to a nonpunitive purpose;" or (5) "is excessive with respect to this purpose." *Id.*[11] The Supreme Court evaluated the Alaska statute using

---

[11] The Court noted that the final two *Mendoza-Martinez* factors, "whether the regulation comes into play only on a finding of scienter" and "whether the behavior to which it applies is already a crime," were "of little weight" because "[t]he regulatory scheme applies only to past conduct, which was, and is, a crime." *Smith*, 538 U.S. at 105. This Court agreed in *Under Seal*. 709 F.3d at 264 n.5.

14

each of these factors and found that the statute's challengers could not "show, much less by the clearest proof, that the effects of the law negate[d] Alaska's intention to establish a civil regulatory scheme." *Id.* at 105.

Using the *Smith* framework, this Court held in *Under Seal* that SORNA's registration requirements are nonpunitive. 709 F.3d at 263; *id.* at 264 ("Appellant cannot show, much less by the 'clearest proof,' that SORNA's effects negate Congress' intent to establish a civil regulatory scheme."). We analyzed the registration requirements using the five factors that *Smith* had found to be the most relevant. *Id.* at 265–66. That analysis remains the law of this Circuit and compels the conclusion that "SORNA's registration requirements, as applied to [Wass], do not violate the" ex post facto clause. *Id.* at 266.[12]

IV.

Finally, Wass urges us to employ the doctrine of constitutional avoidance to find that SORNA cannot apply to pre-SORNA offenders. Constitutional avoidance is, however, a canon of statutory interpretation.

Here, our interpretation of the statute is circumscribed by precedent. Accordingly, the doctrine of constitutional avoidance does not apply. *See United States v. Awadallah*, 349 F.3d 42, 55 (2d Cir. 2003) ("Th[e constitutional avoidance] rule, which facilitates a choice between alternative interpretations of an ambiguous statute, has no bearing if the meaning of the statute is known." (citing *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S.

---

[12] *Under Seal* involved a juvenile defendant, whereas Wass is an adult. 709 F.3d at 259. But *Under Seal*'s analysis of the *Smith* factors did not depend on the defendant's juvenile status. *See id.* at 265–66.

125, 134 (2002))); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) ("In the absence of more than one plausible construction, the canon simply has no application." (internal quotation marks omitted)); *cf. United States v. Simms*, 914 F.3d 229, 252 (4th Cir.) (en banc) (rejecting the Government's contention that the Court should adopt a "reading of [a statute] that directly conflicts with how courts . . . have thoughtfully interpreted th[e] statute . . . since its enactment three decades ago," and noting that "[t]ellingly, the Government has yet to identify any case in which the Supreme Court has done anything comparable in the name of constitutional avoidance"), *cert. denied*, 140 S. Ct. 304 (2019).

V.

Because binding precedent forecloses Wass's arguments, we reverse the district court's dismissal of his indictment and remand for further proceedings.

*REVERSED AND REMANDED*